SAMUEL H. KATTOR *vs.* BERTIS H. ADAMS & others.

Worcester.    September 28, 1948. — February 8, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Contract*, Performance and breach, Sale of real estate.  *Sale*, Transfer of
possession.  *Real Property*, Possession, Rents and profits.

Findings, warranted by the evidence at the hearing of a suit in equity
for specific performance of a contract for sale of land, of repudiation
of the contract by the plaintiff by refusing to accept a deed offered
by the defendant because it did not include land to which the plaintiff
was not entitled under the contract, required a decree dismissing the
bill.

Until land was conveyed pursuant to a contract for its sale not providing
for the prospective purchaser's having possession before the convey-
ance, the landowner continued to have the right of possession and
was entitled to a sum paid to the prospective purchaser as rent for
the location of an advertising sign erected on the land without the
consent of the landowner.

BILL IN EQUITY, filed in the Superior Court with a writ
of summons and attachment dated July 16, 1947.

The suit was heard by *Donnelly*, J.

*R. G. A. Petterson*, for the plaintiff.

*F. A. Pierce*, for the defendants.

SPALDING, J.    The plaintiff brings this bill in equity to
compel specific performance of an agreement for the sale
of a parcel of land in Worcester.    The defendants included
a counterclaim in their answer in which they sought damages
for an alleged unauthorized use of the land by the plaintiff.
The judge made findings of fact and ordered a decree to be
entered dismissing the bill and awarding damages to the
defendants on their counterclaim in the amount of $100.
A decree was entered accordingly, from which the plaintiff
appealed.    The evidence is reported.

Pertinent findings of the judge are as follows:    The
defendants were the owners of certain land in Worcester
which adjoined a State highway known as the Southwest
Cut-off.    The land lay between the highway and a swamp

owned by one Rhodes. The negotiations hereinafter mentioned were carried on by the defendant Bertis H. Adams (hereinafter called Adams) who had been authorized to act on behalf of the other defendants. Following negotiations with the plaintiff, Adams on May 11, 1943, received from him a deposit of $100 and executed and delivered the following memorandum: "Worcester, May 11, 1943. Received one hundred dollars ($100) from Samuel J. Kattor, balance of $900 to be paid when papers are passed and a mortgage for five hundred dollars ($500) due in a year from day the papers are passed for land with 600 feet frontage opposite Mr. Kattor's Gas Station on Southwest Cut-off. Bertis H. Adams." Prior to the execution of this memorandum the plaintiff and Adams had fixed the approximate location of the limits of the six hundred foot frontage mentioned therein. The highway at that point is straight, and the tract which was the subject matter of the negotiations was to extend at right angles from the highway to Rhodes Swamp, which was the rear boundary of the defendants' land. Thereafter Adams caused a surveyor to draw up a description of the property to be sold and it was submitted to the plaintiff. The plaintiff asked for a more definite description and requested that stakes be set at the corners of the property. The surveyor set stakes and marks to enable the plaintiff to cut a surveyor's path through a wooded section of the property, and the plaintiff agreed to cut such a path in order that the surveyor might locate corner stakes.

Shortly thereafter the plaintiff entered upon the land and cut nearly all of the wood upon the lot and cleared away in addition the wood on approximately three acres not included in the agreement. The plaintiff executed a lease with an advertising company under which it erected an advertising sign on the land and for which it paid the plaintiff $100 as rent. "Adams tacitly consented to the operations carried on by the plaintiff" but did not consent to the erection of the advertising sign.

In April, 1946, Adams caused his surveyor to make a description by metes and bounds of the property to be sold,

He submitted it to the plaintiff who rejected it, contending that since it did not include the three acres mentioned above it did not correspond with the agreement. Adams at that time was willing and able to convey the property included in his surveyor's description, but the plaintiff would not perform on those terms. On September 20, 1946, Adams sent a letter to the plaintiff requesting performance of the agreement in accordance with its terms and offering to return the deposit if the plaintiff did not want the property. The plaintiff did not reply to this letter. The present proceedings were begun by a writ dated July 16, 1947.

The judge ruled "that the conduct of the plaintiff in refusing to accept a deed of land according to the description furnished by the surveyor constituted a repudiation of the agreement." He also ruled that the unauthorized acts of the plaintiff with respect to the property were such that he did not come into court with clean hands.

Since the statute of frauds was not pleaded, we need not consider whether the memorandum signed by Adams satisfied its requirements. Nor need we consider whether the time had passed when an effective offer of performance could have been made. Inasmuch as no time for performance was specified in the agreement, it was to be performed within a reasonable time. *Marlowe* v. *O'Brien*, 321 Mass. 384, 386. It is not unreasonable to infer that the delay was acquiesced in by both parties. Adams evidently considered that the time for performance had not gone by when he offered performance in 1946. The reasons for the delay were not gone into at the trial. The principal issue there, as here, was whether the defendants made an offer to perform the agreement in accordance with its terms which the plaintiff repudiated. The judge resolved this question in the defendants' favor.

There was no error. The findings of the judge not only were not plainly wrong but were amply supported by the evidence. These findings clearly show a repudiation of the agreement on the part of the plaintiff. As stated above, the defendants through Adams were ready and willing to perform the agreement in April, 1946, when the description of

the property was submitted to the plaintiff. The plaintiff, however, insisted that he was entitled to three acres in addition — a position which the court found was not justified. This was a breach of the agreement which excused the defendants from any further performance or offer of performance on their part. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 183–184. The defendants, nevertheless, offered performance on September 20, 1946, and offered to return to the plaintiff his deposit if he did not wish to go through with the agreement, and again the plaintiff would not perform. Plainly on this record the plaintiff was entitled to no relief. We reach this conclusion without reliance on the judge's findings of unclean hands.

The relief awarded to the defendants on their counterclaim was justified on the findings. [1] In this Commonwealth a purchaser of real estate has a right of possession before he obtains a deed if, and only if, the agreement so specifies. *Barrell* v. *Britton,* 252 Mass. 504, 509. Under the agreement here the plaintiff acquired no such right. The defendants at all times here material had the right of possession and were entitled to the rents and profits. *Beal* v. *Attleborough Savings Bank,* 248 Mass. 342. *Barrell* v. *Britton,* 258 Mass. 383, 388–389. *Rayner* v. *Preston,* 18 Ch. D. 1, 11. *Iowa Railroad Land Co.* v. *Boyle,* 154 Iowa, 249, 253. Williston, Contracts (Rev. ed.) § 937. See *Cohasset Water Co.* v. *Cohasset,* 321 Mass. 137, 145–146.

*Decree affirmed with costs.*

---

[1] The damages in the amount of $100 which were awarded to the defendants on their counterclaim represented the sum received by the plaintiff as rent for the billboard location.