MAX MILLER vs. CAMPELLO CO-OPERATIVE BANK.

Plymouth.   March 7, 1962. — April 4, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* For sale of real estate. *Equity Jurisdiction,* Specific perform-
ance. *Res Judicata. Equity Pleading and Practice,* Declaratory pro-
ceeding.

In a suit in equity presenting a proper case for declaratory relief under
G. L. c. 231A, the bill should not have been dismissed even though the
trial court's conclusion on the merits was adverse to the plaintiff; the
declaratory decree proper on the facts should be entered.   [78]
A suit in equity for a declaratory decree respecting the rights of the parties
under an agreement for sale and purchase of real estate, under which
the buyer was in possession of the property, was not barred either by a
judgment for the buyer in summary process brought by the seller or by
dismissal, without decision on the merits, of a suit in equity by the
seller against the buyer for reformation of the agreement.   [78–79]
In the circumstances, under an agreement for sale and purchase of real
estate whereby the buyer took possession of the property, was to pay
the seller a certain sum monthly to be applied first to interest on the
purchase price, then to taxes, and then to the principal of the purchase
price, and was to receive a deed of the property and give a mortgage
back when the principal should have been reduced to a specified amount,
which the parties contemplated would be accomplished within a reason-
able time by the monthly payments but which, by reason of an un-
anticipated increase in taxes, had not been accomplished and was not
foreseeably likely to be accomplished after twenty-seven years, the buyer,
in view of improvements made on the property and otherwise, was en-
titled, at his election, to receive a deed of the property upon paying the
seller the then remaining amount of principal either in cash or by an
interest bearing mortgage obligation, plus the amount of taxes paid
by the seller and not reimbursed to him by the monthly payments;
but, if the buyer should not so elect, he would have no further right to
possession of or other interest in the property.   [79–81]

BILL IN EQUITY, filed in the Superior Court on August 24,
1959.

The suit was heard on a master's report by *Gourdin,* J.

*Lewis H. Miller,* for the plaintiff.

*Willis A. Downs,* for the defendant.

CUTTER, J.   Miller seeks reformation of an instrument dated September 4, 1935, and declaratory and injunctive relief.   A master's report was confirmed and a final decree was entered dismissing the bill.   Miller appealed.

On September 4, 1935, Miller and the bank entered into an agreement, by which Miller agreed to buy, and the bank to sell, a house and lot in Brockton.   The premises were ''to be conveyed upon performance of the conditions below set forth by . . . deed . . . conveying . . . title . . . free . . . of all incumbrances excepting taxes and other municipal assessments which are to be adjusted as of . . . Oct. 1, 1935.   For such deed . . . the [b]uyers agree to pay . . . $2,800 . . . as follows:—Thirty Dollars monthly commencing Oct. 1, 1935, to be applied as follows: — (1) to the payment of interest at . . . six per cent. per annum — (2) to the payment of taxes and other municipal assessments and (3) the balance to the reduction of the principal.   When . . . [the] principal sum has been reduced to . . . [$2,400] the [s]eller agrees to deliver the deed . . . taking back a mortgage for $2,400 in the usual co-operative bank form. Insurance premiums to be paid by the [b]uyers . . . .''

Miller took possession about September 4, 1935.   He has made improvements of a value not established.   For this purpose he has borrowed from the bank a total of $600, of which $190 remains unpaid.   Miller has paid the agreed $30 per month and all the insurance premiums, except $27.10, reflected in the account in the margin.[1]

Under the 1935 agreement, the principal sum of $2,800 was reduced to $2,685 by application of portions of the $30

[1] The account as of the date of the master's report stood as follows:
*Paid or accrued by the Bank*

| | | |
|---|---|---|
| Taxes paid | $ | 5,711.51 |
| Interest accrued | | 4,763.72 |
| Water and sewer | | 662.10 |
| Insurance paid by bank | | 27.10 |
| | | $11,164.43 |
| *less* payments by Miller | | 9,408.15 |
| Deficit | $ | 1,756.28 |
| *plus* owed by Miller for loans | | 190.00 |
| Total claimed by the bank | $ | 1,946.28 |

monthly payments. "Thereafter the principal sum was not reduced, but increased because of the increase in taxes." Real estate taxes in 1960 were $369.59, so that the $30 monthly payments are now not sufficient even to meet taxes. Miller seeks to have the agreement reformed to indicate that, as long as he pays $30 per month plus insurance premiums, he shall not be disturbed in possession. The master concluded that this "was the understanding of the parties" but that $30 "per month would not be sufficient was not contemplated." [2]

The trial judge concluded (a) "that the parties contracted in the belief that the sum of . . . [$30] a month would actually reduce the principal to $2,400 in time; and that they never considered the contingency that, due to increase in taxes or other reasons, the payment would not suffice to accomplish the purpose"; (b) that they "never intended that possession would continue for a reasonable time only nor that possession would continue indefinitely, for they never anticipated that the contingency that has arisen would arise"; and (c) that they "must have intended that the principal be reduced to $2,400 at some time; that the payment would be adequate to accomplish that end . . . ." Because Miller has not offered to increase "his payments to effect . . . [the parties'] purpose," the judge (purporting to apply the principle that he who seeks equity must do equity) ordered the bill dismissed. No declaratory relief was given.

1. The bill should not be dismissed in these circumstances where a declaration of rights is sought. *Vasilakis* v. *Haverhill*, 339 Mass. 97, 101. *Waltham Door & Window Co. Inc.* v. *S. A. Woods Mach. Co.* 342 Mass. 335, 338. We proceed, therefore, to declare the rights of the parties as fully as this obscure 1935 agreement will permit.

2. The circumstances of the judgment in the 1958 summary process for Miller are not sufficiently shown in the

[2] There has been prior litigation between the parties: viz., a bill in equity brought by the bank in 1956 to obtain reformation, which was dismissed after a demurrer was sustained; and summary process brought in 1958 by the bank, in which there was judgment for Miller.

record to enable us to determine the precise basis for that judgment. We assume that it establishes that the bank did not then have right to possession, enforceable by summary process, under G. L. c. 239, as amended. Such a judgment, however, is not a bar to any action thereafter brought by either party to recover the land. G. L. c. 239, § 7. Cf. *Gordon* v. *Sales,* 337 Mass. 35, 36. It also does not bar a declaration of the present rights of the parties under G. L. c. 231A. The 1956 equity proceeding was not decided on the merits. See *Elfman* v. *Glaser,* 313 Mass. 370, 373. Neither prior case is determinative of the present rights of the parties under the 1935 agreement.

3. The 1935 instrument inadequately expresses what was probably an incomplete agreement, made upon the assumption that substantially the then existing tax situation would continue. We assume that the parties expected Miller to occupy the premises at once and that the $30 payments would be adequate to reduce the principal to $2,400 within some reasonable time, when a deed and mortgage back would be exchanged. The parties did not contemplate that what in some respects vaguely resembles a lease with a contingent option to purchase should go on without limit of time. They were entering into a purchase and sale arrangement which they expected to be completed, even though it might be a substantial time before completion was in order. It is now clear that the time for performance set in the agreement is unlikely to occur at any time reasonably to be anticipated. Whatever the parties may actually have contemplated, a reasonable time (see *Kattor* v. *Adams,* 323 Mass. 686, 688) for the continuance of this incompletely thought out arrangement has now expired. It is now twenty-seven years since the 1935 arrangement commenced. It would not be appropriate, of course, to treat this agreement as strictly as a contract for an option limited in time. See *Cities Serv. Oil Co.* v. *National Shawmut Bank,* 342 Mass. 108, 110. Nevertheless, what has some aspects of an option cannot be permitted to run on substantially beyond any period which the parties could sensibly have had

in contemplation. See Williston, Contracts (3d ed.) §§ 38, 40; Corbin, Contracts, §§ 36, 95–96. See also analogy of G. L. c. 106, § 1–204 (inserted by St. 1957, c. 765, § 1). This is not a case where, by any fair interpretation of the agreement in the light of its purpose, the bank has bound itself interminably to a performance, even if it may have become impossible. Cf. *Boston Plate & Window Glass Co.* v. *John Bowen Co. Inc.* 335 Mass. 697, 699–700.

Because the condition (reduction of principal to $2,400), which would oblige Miller to accept a deed and to give a mortgage, has not occurred, Miller need not purchase the property unless he now wishes to do so promptly upon the terms outlined below. He is not entitled to remain in possession. The possibility of purchase in orderly course, which was the basis of the parties' incomplete 1935 arrangement, has ceased to exist. Nevertheless, in these unusual circumstances, we think that the fact that Miller has made improvements equitably entitles him to a fair opportunity to purchase on terms approximating as closely as may be those of the original arrangement.

Accordingly, we declare the rights of the parties as follows. Miller must vacate the premises within thirty days after the date of the rescript unless prior thereto he shall have filed with the clerk of the courts in Plymouth County a written offer under seal to pay to the bank, upon its demand, in return for a deed the following: (a) either in cash, or by coöperative bank mortgage in usual form, the sum of $2,685 (any mortgage obligation to bear interest at six per cent per annum); (b) $190 in cash for the unpaid balance of the loans to him and $27.10 for unpaid insurance premiums; and (c) in cash, but without interest, the amount of an adjustment of taxes as of the agreed date, October 1, 1935.[3] If Miller shall make such an offer in a form, either acceptable to the bank or approved by a judge of the Supe-

---

[3] Any such adjustment shall be computed as follows: (1) Each payment heretofore made by Miller will be applied as provided in the agreement; (a) first to interest, (b) then to taxes, and (c) then to reduction of principal. (2) The adjustment for taxes will be the aggregate amount paid by the bank for taxes less the amount of Miller's payments thus properly applied to taxes. For this adjustment, taxes shall include water and sewer assessments.

rior Court, the bank shall convey the property to Miller upon receiving payment in accordance with the offer. If Miller shall not file such a written offer, or if it is in a form not acceptable to the bank or approved by the judge, he shall have no further rights or interest in the property, or under the 1935 agreement, after the expiration of the thirty day period. Miller now owes the bank in any event the sum of $190 for the unpaid balance of his loans and the sum of $27.10 for unpaid insurance premiums. If he shall not seasonably make a sufficient written offer, as provided above, the bank will be entitled to have execution issue against Miller for the total of these sums with interest from the date of application for such execution.

4. The final decree is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion, which may include retention of jurisdiction to supervise the transfer of title, if Miller shall make an offer as outlined above, and to ensure his vacating the premises promptly if that becomes appropriate.

*So ordered.*