MICHAEL A. BUCCIERO, SR. *vs.* ALFRED T. DRINKWATER
& another,[1] trustees.

Middlesex. January 12, 1982. — May 19, 1982.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Contract*, Sale of real estate, Performance and breach.

The prospective buyer of real estate under a valid, binding option agree-
ment was entitled to specific performance where the buyer was ready,
willing and able to purchase the property on the day scheduled for
closing and where an honest disagreement over the meaning of a real
estate tax payment clause, although material, did not go to the essence
of the agreement.  [554-556]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 3, 1980.

The case was heard by *O'Neill*, J., a District Court judge
sitting under statutory authority.

*Steven T. Ladoulis* for the plaintiff.

*Ivor C. Armistead, III* (*Carol Lynn May* with him) for
the defendants.

---

[1] Louis P. Drinkwater.  In the Superior Court there was a party inter-
vener who claimed to be entitled to the deposit money, $75,000, given by
Bucciero to the Drinkwaters at the time Bucciero exercised the option.
The intervener had also filed a separate action against Bucciero and the
Drinkwaters pressing the same claim.  The actions were consolidated for
trial.  Judgment entered for the intervener in his separate action against
all defendants, and an entry was made in the judgment in the present ac-
tion which reads, "[N]o judgment as to the intervenor."  The separate
action is not before us.  No party to this action has argued concerning the
intervener's claim or the technical correctness of the entry made in the
judgment with respect to that claim, see Mass.R.A.P. 16(a)(4), 367 Mass.
921 (1975), and accordingly we have not considered and do not decide the
manner in which that claim should have been disposed of.  We note that
the judge found that "[t]here is no dispute among the parties that [the in-
tervenor] is entitled to recover."

ARMSTRONG, J.  In March, 1979, the parties executed an agreement which gave the plaintiff, Bucciero, an option to purchase seventy-three acres of land in Wilmington and North Reading owned by the Drinkwater Realty Trust. Bucciero exercised the option in April, 1979, and delivered to the Drinkwaters a $75,000 deposit called for by the agreement. The parties extended the closing day to August 14, 1979; there was no clause which expressly made time of the essence.

The parties and their attorneys met on August 13 to work out details of the closing.  The Drinkwaters' attorney, new to the transaction, was critical of the agreement and expressed the view that the Drinkwaters should never have signed it.  The parties reviewed the agreement paragraph by paragraph.  The review was complicated by the fact that in March or April the parties, then unrepresented by counsel, had made various amendments to the typed agreement, and their interlineations of the amendments did not precisely agree.  Only one interlineation seemed to pose an obstacle to closing.[2]  The agreement stated that "the real estate taxes due on the parcel for the year in which the option is exercised and all [due and] subsequent years, will be paid by the buyer . . . ."  The bracketed words "due and" were interlineated by hand in Bucciero's and the Drinkwaters' copies of the agreement.  The interlineations were in this instance identical, but a dispute arose as to what the quoted language, as thus amended, meant.  The Drinkwaters' at-

[2]None of the other interlineations, with their occasional slight variations, were of concern to the parties.  One interlineation calls for brief explanation.  There was a provision in the typed agreement which let the buyer, at his election, set up an escrow account with the balance of the purchase price, to be paid by the bank to the sellers in installments.  The typed copy says that the account should stand in the name of the buyer. The Drinkwaters' copy of the agreement, introduced in evidence as exhibit 1, has "buyer" crossed out and "sellers" inserted.  Bucciero's copy of the agreement, introduced as exhibit 13, shows no such amendment.  As nearly as we can tell from the testimony, the interlineation was made at the August 13 meeting at the insistence of the Drinkwaters' attorney.  The point seems to have been of no concern to the parties because Bucciero was not going to elect to establish the account.  No issue is made of that clause on appeal.

torney took the position that Bucciero was required to pay all real estate taxes due on the parcel in 1979, including all back taxes. The total amounted to $84,170.93. Bucciero said he would pay only the 1979 taxes. The meeting broke up in disagreement on this point, Bucciero saying that he would appear the next morning for closing prepared to pay the lesser amount, and the Drinkwaters' attorney saying there was no point to meeting the next day.

After the meeting Bucciero had a change of heart and arrived the next morning for the closing with certified checks for the purchase price and for the full amount of the taxes then due. The Drinkwaters did not show up, and at 10:30 A.M. their attorney telephoned the office where various persons had assembled for the closing to inform them that he and the Drinkwaters would not appear. Unaccountably, it was not mentioned to him that Bucciero was conceding the only point seemingly in dispute.

The parties and their attorneys had further discussions in August, September, and October. Modifications were discussed and there was testimony that at one of those meetings all parties, including the intervener mentioned in n.1, agreed to call off the whole deal and arranged for a return of the deposit money and an exchange of releases. The judge found, however, that at the postclosing date meetings no understanding was reached.

Bucciero then brought the present action for specific performance of the agreement. The judge found that the parties had entered into a valid, binding option agreement, and that on the day scheduled for the closing, "Bucciero was ready, willing and able to purchase the property." He also found, however, that "[t]he terms of the sale were never agreed upon between the parties. The tax clause as interlineated was ambiguous and resulted in a substantial difference in the purchase price. Bucciero knew on August 13 that the Drinkwaters were not going to tender a deed unless all back taxes were paid, and his decision to pay said taxes was not communicated to the sellers or their attorney at any time prior to the closing." The judge concluded that "under

existing circumstances the sellers had no duty to tender a deed or to be present for a proposed closing," and that "[t]he buyer was entitled to a return of his deposit from the sellers on August 14, 19[79]."[3]

We are not able to agree with the rulings of the judge. The judge's finding to the effect that the parties had entered into a valid, binding option agreement was amply supported by the evidence. The finding that "the terms of the sale were never agreed upon by the parties," if read to refer to events prior to the pre-closing disagreement, might suggest that the minds of the parties had not met on material terms of the contract; but the evidence would not warrant such a finding. From the evidence we only know that the parties met in early March and signed the same document, intending it to be a binding option agreement and that at a subsequent meeting in March or April they adopted certain amendments which were interlineated by hand, including the amendment to the provision concerning the payment of taxes. We know nothing of the circumstances or conversations that preceded the adoption of that amendment, nor do we have any intimation of the parties' subjective understandings. The transcript is devoid of any evidence of discussion or disagreement between the parties concerning the tax clause until the meeting on August 13, the day before the scheduled closing. One who contends that the minds of the parties never met despite their having executed a written agreement containing all the material terms of contract bears, we think, a burden of proof that the defendants have not met. The interlineation in the tax provision was ambiguous and required construction, but "[t]he fact that an executed written contract contains within itself difficulties of construction about which the parties disagree does not enable a party to contend that the minds never met." *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 196 (1945).

The judge ruled that the construction advanced by the Drinkwaters at the August 13 meeting was correct, that

---

[3] The finding says 1980, but 1979 must have been intended.

Bucciero's interpretation would have rendered the insertion of the words "due and" meaningless. That ruling is not challenged, and we assume for purposes of decision that the clause cast upon Bucciero the duty of paying all back taxes. It does not follow that the contrary position taken by Bucciero at the August 13 meeting amounted to a total repudiation of the contract or a repudiation of a duty so material as to justify the Drinkwaters' refusal to go forward with the agreement when it became apparent subsequent to the closing date that Bucciero was willing to pay all back taxes. Bucciero's position on August 13 was not shown to be other than an honest disagreement over the meaning of a clause which, although material, did not go to the essence of the agreement. The amount in dispute, something less than $84,170.93 (that figure includes both taxes for the year 1979, which were not in controversy, and back taxes, which were), was relatively insubstantial in comparison to the total contract price, in excess of $1.6 million. "A mere refusal to pay money when due, especially a refusal based upon the terms of the contract and in good faith although mistakenly believed to be justified by it, is not a repudiation of the contract . . . ." *Daley* v. *People's Bldg, Loan & Sav. Assn.*, 178 Mass. 13, 18 (1901) (Holmes, J.). "In order to operate as a discharge of the other party, the repudiation must be either with respect to the entire performance that was promised or with respect to so material a part of it as to go to the essence. It must involve a total and not merely a partial breach." 4 Corbin, Contracts § 975, at 918 (1951).

It is clear, as the Drinkwaters contend, that time is of the essence of an option, *Hunt* v. *Bassett*, 269 Mass. 298, 302 (1929); *Cities Serv. Oil Co.* v. *National Shawmut Bank*, 342 Mass. 108, 110 (1961); but that principle has no application here, the plaintiff's option having been timely exercised. The closing date was not of the essence, despite the fact that it was fixed by an option agreement. *Boston & Worcester St. Ry.* v. *Rose*, 194 Mass. 142, 149 (1907). *American Oil Co.* v. *Katsikas*, 1 Mass. App. Ct. 437, 439 (1973).

When the closing date passed, Bucciero was not in default or breach and the Drinkwaters were not discharged from their contractual obligation. Compare *Limpus* v. *Armstrong,* 3 Mass. App. Ct. 19, 21-24 (1975). Bucciero, by the judge's finding, had been ready, willing, and able to carry out the agreement on the closing date. Whether his failure to communicate his willingness to pay all back taxes excused the Drinkwaters from attending or entitled Bucciero to a return of his deposit we need not decide, because Bucciero wishes to go through with the contract. By showing up at the closing, of course, the Drinkwaters could have put Bucciero to a choice at that time between performance or default. Since Bucciero was not put in default and is prepared to carry out the agreement, and the Drinkwaters have clearly manifested their refusal to perform the agreement, Bucciero is entitled to specific performance. *Limpus* v. *Armstrong, supra* at 24. No basis exists for a discretionary denial of equitable relief. See *Raynor* v. *Russell,* 353 Mass. 366, 367-368 (1967); *Allen* v. *Rakes,* 359 Mass. 1, 6 (1971).

The judgment therefore must be reversed and the case remanded for the entry of a judgment ordering the defendants to convey title upon tender by the plaintiff in accordance with the terms of the agreement and at or within such time as may be fixed by the court.

*So ordered.*