Agnes B. CURLEY, Plaintiff, Appellee,

v.

**MOBIL OIL CORPORATION,**
Defendant, Appellant.

No. 88–1295.

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1988.
Decided Nov. 8, 1988.

Robert M. Gault with whom John C. Plotkin, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., and Charles B. Straus, III, were on brief, for defendant, appellant.

Charles B. Swartwood, III with whom Dale R. Harger and Mountain, Dearborn & Whiting, Worcester, Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and ATKINS,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Mobil Oil Corporation ("Mobil") appeals from the district court's ruling after a bench trial that Mobil violated an agreement between the parties for the purchase and sale of land. Mobil also appeals from the district court's alternative ruling that, even if Mobil did not violate the agreement, it is not entitled to specific performance. We reverse both rulings.

## I. FACTS AND PRIOR PROCEEDINGS

The relevant facts are not in dispute. Mobil owned a gas station in Leominster, Massachusetts (the "Mobil property"). In order to expand this gas station, in November 1970 Mobil leased from Agnes B. Curley ("Curley") a piece of land (the "Curley property") adjacent to the Mobil property. Mobil subsequently renovated the gas station on its own property, and made Curley's property part of the gas station by altering it in the following ways: 1) it tore down a house on the Curley property; 2) installed gasoline storage tanks underneath the Curley property; 3) paved part of the Curley property; 4) built a small portion of the gas pump islands on the Curley property; 5) built an entrance to the gas station on the Curley property; and 6) erected lights and a large Mobil sign on the Curley property. Mobil leased the entire gas station, including the sublease of Curley's property, to Barney Wood, the gas station proprietor.

The lease between Mobil and Curley, dated November 18, 1970, gave Mobil

the exclusive option, exercisable at the expiration of the fixed term of this lease or any renewal or extension thereof, to purchase the premises ... for the sum of seventy-five thousand Dollars ($75,000). This option may be exercised by the giving of written · notice from [Mobil] to [Curley]. [Mobil] shall have sixty (60) days thereafter for examination of title and at 10:00 A.M. on the day following expiration of said sixty (60) day period [Curley] shall deliver to [Mobil] at North Worcester County Registry of Deeds, a good and valid full quit claim deed....

The form lease, prepared by Mobil, had initially called for a "full covenant warranty deed," but the parties changed this to require that Curley deliver a "full quit claim deed." While Curley warranted in another paragraph of the lease that "the leasehold is good and marketable, free and clear of all liens and encumbrances ...," Curley's ownership of a small portion of the lot was limited to an undivided one-fourth interest. However, the district court found that Mobil had known of, and acquiesced in, this defect in title to the entire leasehold.

The original lease had a term of ten years. It was extended for another five years in 1981, the new term to expire on November 30, 1986. Several months before November 30, 1986, Mobil asked Curley to extend the term again; Curley spurned this request. Instead, Curley offered to purchase the Mobil property. Mobil rejected this counterproposal.

Mobil decided to exercise its option to purchase the Curley property and then resell it to Barney Wood along with its own, adjacent property. In a letter dated November 11, 1986, Mobil exercised its option to purchase the Curley property:

Pursuant to the provisions of ... said lease, Mobil ... hereby notifies you that it has elected to and does hereby exercise its option to purchase the premises covered by said lease for the sum of seventy five thousand ($75,000) dollars.

* Of the Southern District of Florida, sitting by designation.

As provided for in ... the lease, you will deliver a valid full covenant deed at 10:00 a.m. on the day following the expiration of a 60 day title examination period from the date of this notice. Accordingly, delivery of the deed by you will be at 10:00 a.m. January 11, 1987 at the North Worchester [sic] County Massachusetts, Registry of Deeds unless some other time and place is mutually agreed upon.

The letter incorrectly called for a "valid full covenant warranty deed" instead of the quitclaim deed specified in the lease agreement. In addition, January 11, 1987, the closing date set by the letter, fell on a Sunday.

January 11, 1987, came and went without any closing taking place or any communication between Mobil and Curley. This was due in part to Mobil's bureaucratic inertia, and in part to the financing arrangements of the parties involved. Mobil wanted to simultaneously close on its purchase of the Curley property and on its planned sale of both that property and its own property to Wood. By proceeding in this way, Mobil could finance its purchase of the Curley property with proceeds from the sale of the entire gas station to Wood. However, Wood apparently was unable to arrange financing by January 11. Curley neither objected to nor acknowledged the delay.

It was not until March 1987 that Mobil, apparently believing that Wood had arranged financing and that the time was ripe for a simultaneous closing, attempted once more to arrange for the closing. On March 3, 1987, Mobil sent a letter to its agent, Lawyers Title Insurance Company, directing it to arrange a simultaneous escrow closing of the Curley–Mobil transaction and the Mobil–Wood transaction. The letter indicated that the March 1987 rent Mobil owed Curley "should be prorated and deducted from the proceeds." The letter also stated, "Please contact all parties involved and arrange a closing at everyone's earliest convenience. Please forward the closing statement and net proceeds to my attention once closing has occurred."

Mobil sent Curley a copy of its March 3 letter. However, March and part of April went by without Curley hearing anything further concerning a closing date. Curley was concerned that Mobil, which had become a month-to-month tenant under the terms of the lease when it exercised its option to purchase on November 11, 1986, had not paid the March or April rent. Curley, who had never wanted to sell her land, consulted with her grandson and attorney, John Curley. On April 17, 1987, John Curley wrote Mobil to repudiate Curley's agreement in the lease to sell her property to Mobil. The letter cited as reasons for this repudiation the fact that Mobil's November 11 letter set a closing date on a Sunday and also erroneously demanded a warranty deed rather than the quitclaim deed specified in the lease. The letter also noted that Curley had not received "any notice of any date, time or place when closing would occur" after receiving a copy of Mobil's March 3 letter. Because of these actions and its failure to tender the purchase price "within the time limit contained in [the lease]," Mobil "forfeited any right to purchase the property under the terms" of the lease.

Upon receiving this letter, Mobil immediately tendered the rent it owed Curley. It also insisted that Curley had no right to repudiate the agreement arising out of the purchase option in the lease and threatened litigation to enforce the agreement. In a letter dated June 16, 1987, Mobil tried to arrange a closing in June 1987. The letter also referred to a title search that revealed that "Mrs. Curley only owns a one-quarter (¼) interest in the subject property, which is contrary to her warranty in the lease," and asked Curley to "clarify the extent of [her] ownership ... immediately." This concern about Curley's title to her property had arisen earlier in a letter John Curley received from Steven Bik, a local attorney retained by Mobil. In this letter, dated April 17, 1987 (received just after Curley had repudiated the agreement), Bik stated that Barney Wood's attorney would accept Curley's "title provided you give us your assurance that you will cooperate in any

Land Court action that may be initiated to clear up this defect."

On June 25, 1987, Curley brought this action against Mobil in Worcester County Superior Court, seeking a declaratory judgment establishing that the terms of the lease had expired on November 30, 1986, that Mobil's option to purchase the Curley property had terminated and was unenforceable, and that Curley had no responsibility to remove an alleged defect of title. Mobil removed the action to the district court, and counterclaimed that, among other things, Curley had violated her agreement in the lease to sell her land. Mobil sought specific performance of the agreement.

The case was tried without a jury. The district court ruled that Mobil's March 3 letter had made "time of the essence" and consequently Mobil had committed a breach of the contract by subsequently "failing to proceed to close the transaction within a reasonable period of time." Given this, the district court ruled that Curley was justified in repudiating the agreement in her April 17 letter. The district court also held in the alternative that "should it be held on appeal that Mobil ... proceeded in a timely fashion, specific performance is denied...." Mobil appeals from these rulings.[1]

## II. WHO BREACHED THE AGREEMENT?

■ The district court's ruling that Mobil's March 3 letter made time of the essence, and that Mobil thereafter committed a breach of the purchase and sale agreement by not arranging a closing within a reasonable time, is a mixed question of law and fact. We consequently review the district court's decision under the clearly erroneous standard of Fed.R.Civ.P. 52(a). *See Fortin v. Commissioner of Massachusetts Department of Public Welfare*, 692 F.2d 790, 794 (1st Cir.1982); *Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106, 109 n. 2 (1st Cir.1979), *cert. de-*

nied, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed. 2d 731 (1980).

Mobil argues that the district court committed clear error in ruling that Mobil's March 3 letter made time of the essence in the performance of the parties' agreement for the purchase and sale of the Curley property. We agree. Because the March 3 letter did not make time of the essence, and because the delays in Mobil's attempts to close the transaction were not otherwise unreasonable, Mobil was not in breach of the purchase and sale agreement when Curley sent her April 17 letter refusing to sell her property to Mobil. Having no legal basis for such refusal, it was Curley, not Mobil, who violated the agreement.

This diversity case is governed by Massachusetts law. Under Massachusetts law, time is presumed not to be of the essence in an agreement for the sale of land, including agreements formed through the exercise of purchase options. *See Mansfield v. Wiles*, 221 Mass. 75, 108 N.E. 901 (1915); *Merry v. A.W. Perry, Inc.*, 18 Mass.App.Ct. 628, 469 N.E.2d 73, *rev. denied*, 393 Mass. 1104, 471 N.E.2d 1354 (1984); *Bucciero v. Drinkwater*, 13 Mass.App.Ct. 551, 434 N.E. 2d 1315 (1982); *Limpus v. Armstrong*, 3 Mass.App.Ct. 19, 322 N.E.2d 187 (1975). As a consequence of this presumption, an agreement is not terminated when the date set for a closing passes without performance by either party. "The mere fact that the agreement specified a date for closing [does] not make time of the essence." *Limpus*, 3 Mass.App.Ct. at 31–22, 322 N.E.2d at 189–90.

While time is not "ordinarily of the essence," it "may be made so by clear manifestation of the intent of the parties in the contract itself, [or] by subsequent notice from one party to another...." *Mansfield*, 221 Mass. at 82, 108 N.E. at 903. The ability of one party to make time of the essence by giving the other party notice of such a condition is more fully described in *Merry*, 18 Mass.App.Ct. at 630, 469 N.E.2d

---

**1.** The district court also ruled 1) that the term of the lease in issue expired on November 30, 1986; 2) that Mobil effectively exercised its option to purchase; and 3) that Curley has no responsibility to remove an alleged defect of title. Neither party challenges these rulings on appeal.

at 74–75 (quoting *Limpus,* 2 Mass.App.Ct. at 22, 322 N.E.2d at 190) (citations omitted):

> [After the] date specified for the closing passe[s] without a formal tender of performance by either party . . ., either party by notice to the other "[may] . . . assign[ ] a reasonable time for the completion of the transaction, thereby making performance within that time of the essence of the contract."

Massachusetts case law requires not only that the notice assign some reasonable time for the other party to perform, but also that the notice make performance within this time "of the essence." In other words, the notice must make timely performance a *condition* of the agreement by indicating in some way that the agreement will terminate if there is no closing within the assigned time. In *Church of God in Christ, Inc. v. Congregation Kehillath Jacob,* 370 Mass. 828, 834, 353 N.E.2d 669, 672 (1976), the Massachusetts Supreme Judicial Court stated that, in "the circumstances of this case, clear notice of impending cancellation was a requisite[;] . . . such notice must be clear and definite as to time of payment and *to the fact that nonperformance on time will serve to dissolve the contract.*" (Emphasis added.) While *Church of God* may be distinguishable in that, arguably, its facts called for an especially precise notice as an *express* time-of-the-essence clause in the contract had previously been waived, our interpretation of Massachusetts law is bolstered by *Merry,* 18 Mass. App.Ct. at 629, 469 N.E.2d at 74. *Merry* held that the following notice made time of the essence: "My client is disposed to return [the purchaser's] deposit and then offer the property to other interested parties unless we receive some information acknowledging that he will be ready to perform shortly." *Id.* Other jurisdictions similarly require that, for a party to make time of the essence, its notice to the other party must be reasonably definite as to its intention to rescind the agreement unless it is performed within some designated time. *See generally* Annot., 32 A.L.R.4th 8, 38–41 (1984).

In this case, the option to purchase in the lease agreement between Curley and Mobil did not expressly make time of the essence. When Mobil exercised its option to purchase, a bilateral agreement was formed between Mobil and Curley: Mobil's "promise to pay the price and [Curley's] promise to convey title were mutually dependent; simultaneous performance was contemplated." *Limpus,* 3 Mass.App.Ct. at 22, 322 N.E.2d at 190. When January 21, 1987, the initial closing date, passed without either Mobil or Curley tendering performance, "neither was discharged, nor was either in breach or default." *Id.* At this point, either Curley or Mobil could have made time of the essence by giving adequate notice of an intention to rescind unless the closing occurred by or within some reasonable designated time. But we can see no basis for the district court's determination that Mobil's March 3 letter constituted such notice. The March 3 letter directed Mobil's own agent, *not* Curley, to "arrange a closing at everyone's earliest convenience" and instructed the agent that, at the time of closing, the March 1987 rent Mobil owed Curley "should be prorated and deducted from the proceeds" of Mobil's sale of the gas station to Wood. Even assuming this can be construed as signalling that Mobil envisaged a March closing, the letter nowhere makes a March closing a condition of Mobil's performance of the agreement. The intelligible assertion of such a condition is a prerequisite under Massachusetts law. Here, while the letter indicates Mobil's desire to close at "everyone's earliest convenience," it fell short of making performance within March *of the essence.*[2]

■ Curley argues that even if Mobil did not make time of the essence, Mobil com-

---

**2.** Curley argues plausibly that the March 3 letter must be viewed under the totality of circumstances in determining whether Mobil made time of the essence. We do not see how the circumstances Curley lists in her brief (Mobil had 60 days before the initial January 11 closing date to examine Curley's title; Mobil failed to pay the March and April rent promptly; Curley relied on the March 3 letter as setting a March closing date) made time of the essence, even when coupled with Mobil's March 3 letter.

mitted a breach of the agreement by failing to close within a reasonable time after termination of the lease.[3] Less than five months passed from the date the lease terminated (November 30, 1986) to the date Curley repudiated the agreement (April 17, 1987).[4] It is true that a party is bound to an agreement to sell land for no more than a reasonable time before closing takes place where the agreement does not specify a date for performance. *See Richardson v. Parker*, 353 Mass. 764, 233 N.E.2d 196 (1968); *Powers, Inc. v. Wayside, Inc. of Falmouth*, 343 Mass. 686, 180 N.E.2d 677 (1962). However, we cannot say that under the circumstances of this case Mobil acted unreasonably in failing to close within the five-month period. The parties agreed in the lease that Mobil would have until January 11 to examine Curley's title. When no closing occurred on January 11, Curley said nothing. Nothing thereafter occurred during the three months between the original closing date and Curley's repudiation which made the passage of the time unreasonable. Curley did not prepare a deed, attempt to close or even communicate with Mobil during that period. Mobil had told Curley that it planned to sell the entire gas station to Barney Wood; apparently Mobil was waiting for Wood to obtain financing so that there could be simultaneous closings in respect to Mobil's purchase of the Curley property and its sale of the gas station to Wood. Under these circumstances, the five-month time period was not unreasonable. *See Kattor v. Adams*, 323 Mass. 686, 688, 84 N.E.2d 124, 126 (1949) (inferring that 3½–year delay was reasonable where both parties appeared to have acquiesced in delay).

In support of her position, Curley cites three cases which have held that a delay in closing was unreasonable. Two of these involve different circumstances and delays longer than that present in this case. *Powers, Inc.*, 343 Mass. 686, 180 N.E.2d 677 (10–month delay in exercising option to rescind was unreasonable); *Miller v. Campello Co–Operative Bank*, 344 Mass. 76, 181 N.E.2d 345 (1962) (27–year delay). The third case, *Richardson*, 353 Mass. 764, 233 N.E.2d 196, while holding that a three-month delay was unreasonable under the circumstances, is distinguishable in that the trial court had found that the purchaser would never be able to obtain financing or oil permits, both conditions precedent of the parties' agreement.

We conclude that Mobil did not make time of the essence nor did it act unreasonably in failing to close the agreement before Curley repudiated. The district court was clearly erroneous in ruling that Mobil's March 3 letter made time of the essence and in ruling that Mobil committed a breach of the agreement by failing to close the transaction within a reasonable time. It follows that Curley was not justified in repudiating the agreement in her April 17 letter, and that it was Curley, not Mobil, who violated the agreement.

## III.  SPECIFIC PERFORMANCE

The district court ruled in the alternative that Mobil is not entitled to specific performance of the agreement if this court should find that Curley, not Mobil, violated the agreement. The district court has "a reasonable range of discretion ... with respect to granting or denying specific performance." *Raynor v. Russell*, 353 Mass. 366, 367, 231 N.E.2d 563, 564 (1967). *See also Freedman v. Walsh*, 331 Mass. 401, 406, 119 N.E.2d 419, 423 (1954) ("Specific performance is not a matter of absolute

---

**3.** While the district court's ruling from the bench was not based on this argument, and in fact appears to reject it at some points, we nonetheless will consider the argument as an alternative ground for affirming the district court's decision. *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed.2d 1087 (1924). *See also Doe v. Anrig,* 728 F.2d 30, 32 (1st Cir.1984).

**4.** Curley argues that the relevant time period is seven months—from November 30, 1986 to June 26, 1987, the date Mobil set for the closing after Curley had repudiated on April 17. We think the relevant time span is from November 30 to April 17 because Curley's repudiation excused Mobil from further tender of performance of the agreement. *See Horgan v. Ogilvie,* 361 Mass. 13, 277 N.E.2d 821 (1972); *Hazen v. Warwick,* 256 Mass. 302, 152 N.E. 342 (1926); *Limpus,* 3 Mass.App.Ct. at 22, 322 N.E.2d at 190.

right."). However, damages are normally regarded as an inadequate remedy for the breach of a promise to convey land. *Restatement of Contracts* § 360, at 642–43 (1932) (cited in *Raynor*, 353 Mass. at 367, 231 N.E.2d at 564). Thus, "[s]pecific performance of contracts to convey land is usually granted." *Allen v. Rakes*, 359 Mass. 1, 6, 267 N.E.2d 628, 631 (1971). *See also Kaplan v. Bessette*, 357 Mass. 233, 235, 257 N.E.2d 926, 927 (1970). A lower court's denial of specific performance will accordingly be reversed for abuse of discretion where "[t]here is shown no substantial or adequate equitable basis for the exercise of discretion to deny specific performance." *Allen*, 359 Mass. at 6, 267 N.E.2d at 631 (reversing denial of specific performance "in the absence of significant equitable reasons for refusing such relief"); *Bucciero v. Drinkwater*, 13 Mass.App.Ct. 551, 434 N.E.2d 1315 (1982) (reversing denial of specific performance). Such "significant equitable reasons" for denying specific performance include: 1) fraud, overreaching or other inequitable conduct by the purchaser, *Allen*, 359 Mass. at 5–6, 267 N.E.2d at 631; *Kaplan*, 357 Mass. at 235, 257 N.E.2d at 927; 2) undue hardship upon the seller or an inequitable advantage to the purchaser that would result if specific performance were ordered; *Raynor*, 353 Mass. at 367, 231 N.E.2d at 564; *Freedman*, 331 Mass. at 406, 119 N.E.2d at 423; 3) where the contract is unconscionable or induced by mistake; *Chute v. Quincy*, 156 Mass. 189, 191, 30 N.E. 550, 551 (1892).

In this case, we find "no substantial or adequate equitable basis for the exercise of discretion to deny specific performance," and we are therefore constrained to reverse the district court's alternative holding. None of the factors mentioned above are present in this case. The district court specifically found that neither party had acted in bad faith or engaged in overreaching. Curley does not contend, nor does the record indicate, that the agreement was unconscionable or induced by mistake. Furthermore, the balance of hardships weighs heavily in Mobil's favor.

Mobil has expended a substantial sum of money in improving the Curley property, installing underground tanks thereon, and otherwise integrating it into the renovated gas station developed on Mobil's adjacent property.[5] *See Morgan v. Forbes*, 236 Mass. 480, 486, 128 N.E. 792, 794 (1920) (purchaser's performance of repairs at considerable expense "is ordinarily decisive" basis for granting specific performance). In contrast, John Curley testified that Mrs. Curley had not agreed to sell the property to someone else, and that she had made no improvements or repairs to her property since Mobil leased the property in 1970. Moreover, Mr. Curley testified that his grandmother had not been prejudiced in any fashion by the delay in closing the agreement.

The district court based its decision to deny Mobil specific performance partly on the fact that Curley was "prejudiced" by Mobil's failure to timely pay its rent for March and April of 1987. However, the district court found that these late rent payments were inadvertent. In addition, the district court found that Mobil tendered the overdue rent within 30 days of receiving notice of the default in Curley's April 17 repudiation letter. This tender, made within 30 days of Curley's notice, cured the late rent payments according to the terms of the lease and thus Curley could not terminate the lease on the basis of the late payments. The minimal hardship Curley suffered as a result of the inadvertently late payments does not warrant the denial of specific performance. Moreover, Mobil's right to specific performance of the agreement arising out of the purchase option was independent of its obligation under the lease to pay rent. A breach or default as to the latter does not automatically result in the denial of the former. *See Leisure Sports Investment Corp. v. Riverside Enterprises, Inc.*, 7 Mass.App.Ct. 489, 388 N.E.2d 719 (1979) (purchaser's right to exercise purchase option and to specific performance not lost by breach of lease provisions by nonpayment

---

5. Indeed, John Curley, in a letter to Barney Wood's attorney, stated that his grandmother

"realizes that without her property, the service station probably cannot continue to operate."

of rent and bankruptcy filing); *Atlantic Richfield Co. v. Couture,* 4 Mass.App.Ct. 230, 344 N.E.2d 917 (1976) (affirming decree of specific performance even though purchaser breached covenant in lease).

■ The district court also rested its refusal to grant specific relief on Mobil's "insistence that [Curley] do something to clear up a title defect, which was known to Mobil from the inception of the lease." There was a strip of land located on the perimeter of the Curley lot as to which Curley owned only an undivided one-fourth interest. Partial ownership of this piece was a defect that contravened Curley's warranty in the lease that "the leasehold is good and marketable, free and clear of all liens and encumbrances," and also contravened Curley's promise in the purchase option to convey "a good and marketable title and a good and clear record title ... free and clear of all liens and encumbrances." However, the district court found that Mobil knew of, and acquiesced in, this defect from the inception of the lease by failing to object to the defect, as required by the lease, within 60 days after Mobil's title insurance uncovered the defect in 1970.

Nonetheless, at several points after exercising its option to purchase, Mobil's representatives suggested that Curley had some sort of responsibility to remove the title defect under the agreement arising out of the purchase option. In a letter received by John Curley several days after Curley repudiated the agreement in April 1987, an attorney for Mobil informed Mr. Curley that

Mobil intends to purchase this property and sell it to Byron Wood. Mr. Wood's attorney ... is willing to accept this title provided you give us your assurance that you will cooperate in any Land Court action that may be initiated to clear up this defect. Please call [Wood's attorney] ... to give him some comfort in this regard.

Finally, in a June 16, 1987 letter to John Curley, another Mobil attorney attempted to arrange a closing and also stated, "[A] title search indicates that Mrs. Curley only owns a one-quarter (¼) interest in the subject property, which is contrary to her warranty in the Lease. Please clarify the extent of Mrs. Curley's ownership for Mobil Oil Corporation immediately." [6] This letter scheduled a closing for June 26, 1987, where, according to the letter, "Mobil ... will tender payment of the purchase price pursuant to the Lease concurrent with Mrs. Curley's tender of a quitclaim deed to the subject property." While Mobil appeared for this closing, Curley did not.

The district court ruled that "Curley had no responsibility to remove an alleged defect of title." [7] It also characterized Mobil's communications regarding the title defect as requests for "additional performance" by Curley in carrying out her part of the agreement, and the court cited them in denying Mobil specific performance.

We do not think that Mobil's communications formed a proper basis for the discretionary denial of specific performance. Although the district court found that Curley had no responsibility to clear her title, it did not find that Mobil intended to repudiate the agreement unless Curley assisted in this matter. And while Mobil did not make it clear until its closing argument at trial that it was prepared to waive any objection to the title defect neither did Curley ever indicate that she would perform if only Mobil withdrew that objection. Thus Curley did not appear at the June 26 scheduled closing, nor did she at any time tender a quitclaim deed to her property (or announce her willingness to do so) in order to put Mobil to a choice between accepting the defective title, or requiring something more.

Mobil's requests were not made in bad faith. The district court found that this "is not a case of overreaching on the part of

---

**6.** In its November 11, 1986 letter exercising its *option to purchase,* Mobil also mistakenly requested that Curley deliver a "valid full covenant warranty deed" instead of the "valid full quit claim deed" called for in the agreement.

The district court found that this error was inadvertent and that Curley's attorney knew this to be the case at the time.

**7.** Mobil does not challenge this ruling.

either of the litigants; and in all material respects it appears to be a case in which both the litigants have acted throughout in good faith, albeit, in their own self-interests." Nor did Mobil's requests cause any prejudice to Curley. No expense or other harm resulted from them. In fact, Curley received the two Mobil letters that questioned the title defect *after* she had repudiated the agreement in her April 17 letter. There is no present risk that Curley will suffer any future prejudice given the district court's unchallenged ruling that Curley has no responsibility to remedy any defect in the title to her property.

This case is somewhat similar to *Bucciero v. Drinkwater*, 13 Mass.App.Ct. 551, 434 N.E.2d 1315 (1982), which also reversed a lower court's denial of specific performance. In *Bucciero*, the purchaser, on the day prior to the scheduled closing, refused to pay back taxes on the subject property, which he later conceded he was required to pay. While the purchaser attended the scheduled closing, the seller did not, losing the opportunity to "put [the purchaser] to a choice between performance or default." *Bucciero*, 13 Mass.App.Ct. at 555–56, 434 N.E.2d at 1317–18. The court in *Bucciero* held that although the purchaser failed to communicate to the seller his willingness to pay the back taxes until *after* the scheduled closing date, his initial refusal to pay the back taxes, made in good faith, was not a repudiation of the parties' agreement, and that "no basis exists for a discretionary denial of equitable relief." *Id.*

Curley argues that we should affirm the district court's alternative holding given the totality of circumstances. These circumstances include not only Mobil's late rent payments and inquiries regarding the title defect, but also the delays in Mobil's attempts to close, Mobil's threatening legal action to enforce the agreement, Curley's intention to directly lease her property to Wood, and the district court's ruling that the agreement should be construed strictly against Mobil, the party who drafted it. However, these circumstances, even when considered as a whole, do not establish a "substantial or adequate equitable basis for the exercise of discretion to deny spe-

cific performance." *Allen,* 359 Mass. at 6, 267 N.E.2d at 631. We accordingly reverse the district court's alternative holding denying Mobil specific performance.

## IV. CONCLUSION

Mobil did not make time of the essence in the performance of its agreement with Curley to purchase her property, nor were the delays in Mobil's attempts to close unreasonable. Furthermore, Mobil is entitled to specific performance of the agreement. Thus, we reverse the district court's ruling that Mobil violated the agreement and its alternative ruling denying Mobil specific performance, and remand with directions that the district court issue an appropriate order for specific performance.

*Reversed and remanded for further proceedings consistent herewith.*