JEANETTE BLUM vs. STEVEN D. KENYON & another[1]
(and a companion case[2]).

No. 89-P-733.

Berkshire. September 12, 1990. - October 17, 1990.

Present: WARNER, C.J., PERRETTA, & GILLERMAN, JJ.

*Contract*, Option, Sale of real estate, Peformance and breach. *Landlord and Tenant*, Option to purchase. *Jurisdiction*, Specific performance.

In an action seeking specific performance of an option to purchase shares of stock representing a certain cooperative apartment, the buyer was entitled to specific performance as matter of law where the option had been automatically exercised on a certain date, where simultaneous performance by both parties was contemplated, where time was not of the essence in respect of the closing and a slightly more than four-month delay was not unreasonable, where the buyer did not abandon the purchase option during the period of delay, and where the buyer was excused from any offer of performance by the sellers' repudiation of their obligations under the purchase option. [419-423]

CIVIL ACTIONS commenced in the Berkshire Division of the Probate and Family Court Department on January 12, 1988, and January 13, 1988, respectively.

The cases were heard by *Rudolph A. Sacco*, J., on an agreed statement of facts.

*Jerome J. Scully* for Jeannette Blum.

*Brian J. Litscher* for Steven D. Kenyon & another.

GILLERMAN, J. Cross actions were filed by the parties in the Probate Court — Jeannette Blum seeking specific enforcement of an option to purchase shares of stock representing a certain cooperative apartment, and Steven D. Kenyon and Donna L. Kenyon seeking a declaratory judgment that the option which they had granted Blum had terminated. The

---

[1]Donna L. Kenyon.

[2]The companion case is between the same parties.

cases were tried together on the basis of a "Stipulation of Uncontested Facts," including attached documents, all of which the judge adopted as his findings of fact. Because we disagree with the judge's conclusions of law, we reverse the judgment dismissing the suit by Blum and declaring that the option had terminated.

The stipulation recited the following material facts. In November, 1981, Blum made a written offer to the Kenyons to purchase their shares of stock allocated to apartment unit 1C in a housing cooperative. The offer, which the Kenyons accepted, recited that the purchase price was $29,900, that the "mortgage allocation" was $8,782, that the down payment was $1,000, and that the closing was to take place on or before January 2, 1982.

"Because of the excessive interest rates being charged for mortgage loans at that time," the stipulation recites, the parties revised the transaction. On January 2, 1982, the original closing date, they executed a "Lease/Option Agreement" under the terms of which Blum leased an apartment from the Kenyons for five years and acquired an option to purchase the shares of stock in the cooperative allocated to the leased apartment (the "purchase option"). The consideration for the grant of the purchase option was the payment of $9,899 which represented the original down payment of $1,000 plus the balance then due on the mortgage allocation described above. During the term of the lease Blum agreed to pay a monthly rental calculated to cover both the monthly installments of principal and interest due on account of certain related debt to a third party and the monthly maintenance charges.

The purchase option provided that the option, if not sooner exercised during the five-year term, was automatically exercised at the termination of the lease. The option price was the original sale price of $29,900, less the prior payment made to pay in full the first mortgage allocation, as well as the principal balance of the related debt after deducting payments of principal made monthly by Blum in the form of rent. The Kenyons were immediately relieved of liability on

the mortgage allocation and they were relieved of all debt service obligations on the related debt, but they were obliged to wait five years for the cash they were to realize in the transaction. On the other hand Blum may have taken some risk of a falling market.

There is nothing in the stipulation to suggest that either party was in default at any time during the five-year term. Following the expiration of the lease on December 31, 1986, Blum continued to make the regular monthly payments, as she had for five years, and neither party took any action in respect of the purchase option. It was not until June 2, 1987, that counsel for the Kenyons notified Blum that the lease had expired, her option right to acquire the shares had terminated, and that she was now a tenant at sufferance. Blum replied on June 9, 1987. She explained that she had forgotten "the expiration date of the purchase option," apologized to the Kenyons, and requested "an extension of the option period. . . ." She did not understand, evidently, that her option had been automatically exercised, and that the problem was quite different from the one she believed to exist.

There was no reply to Blum's letter of June 9, and on July 16, 1987, Blum's counsel wrote to Kenyons' counsel pointing out that the Kenyons had been silent as to the closing, that the original documentation had been prepared by an attorney representing both parties, that the attorney had advised Blum that the transaction was a sale and that she was entitled to deduct the interest portion of her monthly payments in determining her taxable income, that Blum was prepared to close in accordance with the terms of the purchase option, and, finally, he made demand for a deed and for a closing in the following thirty days. The Kenyons remained fixed in their position and litigation followed.

The Kenyons rest their claim on the clause in the purchase option which provides that in the event of an automatic exercise of the purchase option, the closing is to take place thirty days following "the date on which Buyer is deemed to have exercised this Option . . . or at such other time . . . as is convenient to the parties hereto" (the disputed clause). The

Kenyons' position is that the disputed clause "contemplates that the parties mutually agree to a different date [and that] [n]o mutual agreement was ever reached." Thus the Kenyons claim that Blum — but not the Kenyons — was in default, and, under the default clause in the lease, the Kenyons were entitled to keep the benefit of all payments made by Blum during the five years and six months and all rights of Blum had expired.

The position of the Kenyons — that it was Blum, not the Kenyons, who was obliged to move forward with the closing and that she lost her rights when she failed to do so — is not supported by our decisions. Upon the automatic exercise of the option on December 31, 1986, there arose a bilateral contract between the Kenyons and Blum for the purchase and sale of the shares of stock representing the apartment. See *C. & W. Dyeing & Cleaning Co.* v. *DeQuattro*, 344 Mass. 739, 741 (1962); *Roberts-Neustadter Furs, Inc.* v. *Simon*, 17 Mass. App. Ct. 262, 265 (1983). Blum's promise to pay the purchase price, and the Kenyons' promise to convey title to the shares of stock "were mutually dependent; simultaneous performance was contemplated." *Limpus* v. *Armstrong*, 3 Mass. App. Ct. 19, 22 (1975). See also *American Oil Co.* v. *Cherubini*, 351 Mass. 581, 585 (1967); *Curley* v. *Mobil Oil Corp.*, 860 F.2d 1129, 1133 (1st Cir. 1988).

The requirement of simultaneous performance by the parties in this case was made particularly difficult by the obvious problem that the date for the performance of the contract was uncertain. That uncertainty was derived both from the indefiniteness of the language of the disputed clause as well as from the rule that while time is generally of the essence in respect of the exercise of an option, it is not so regarded in respect of the closing date unless the parties clearly make it so. *Boston & Worcester St. Ry.* v. *Rose*, 194 Mass. 142, 149 (1907); *American Oil Co.* v. *Katsikas*, 1 Mass. App. Ct. 437, 439 (1973). Certainly the disputed clause — which left the date of closing to the convenience of the parties in the event they failed to close thirty days following December 31, 1986, the date the option was automatically exercised — did not

make time of the essence in respect of the closing. See *Dennett* v. *Norwood Hous. Assn. Inc.*, 241 Mass. 516, 520 (1922).

The mere fact that there was one fixed date for closing in the purchase option did not make time of the essence.[3] *Limpus* v. *Armstrong*, 3 Mass. App. Ct. at 21-22; *Bucciero* v. *Drinkwater*, 13 Mass. App. Ct. 551, 555 (1982); *Curley* v. *Mobil Oil Corp.*, 860 F.2d at 1132. In this regard the case at hand is unlike such cases as *American Oil Co.*, v. *Katsikas*, supra at 438 (there it was agreed that if the closing did not occur by a stipulated date, the agreement and all rights of the parties terminated).

The default clause, also relied upon by the Kenyons, is triggered by Blum's failure to close but, even so, the question of the identity of the closing date remains unanswered. Thus, on any view of the disputed clause, or the agreement as a whole, Blum did not lose her rights on December 31, 1986, or at any time within 30 days thereafter, and the question remains, when, if at all, did Blum lose her rights?

No doubt Blum, at some point, would be deemed to have abandoned the option and her right to close, but that hardly can be considered to have happened here. Not a word passed between the parties until Blum received counsel's letter notifying her that all her rights had terminated; until that happened Blum continued to make monthly payments as in the past and without comment by the Kenyons or their counsel. In these circumstances "[i]t is not unreasonable to infer that the delay was acquiesced in by both parties." *Kattor* v. *Adams*, 323 Mass. 686, 688 (1949).

In this respect the case at hand is remarkably similar to *Curley* v. *Mobil Oil Corp.*, *supra.* There, as here, time was not of the essence in respect of the closing, and there, as here, nothing happened with regard to the closing during the period of delay. "[The seller] did not prepare a deed, attempt to close or even communicate with [the buyer] during that

---

[3]For this reason the judge was wrong in holding that Blum lost her rights because she failed to close within thirty days after the termination of the lease on December 31, 1986.

period [of delay]." 860 F.2d at 1134. The court went on to hold that the five-month period of delay was not unreasonable, and the buyer did not lose its rights.

Here the period of delay was less than five months. The relevant time period began on January 31, 1987, the day following the expiration of the thirty-day period after the termination of the lease (December 31, 1986) and ended on June 2, 1987, the date of counsel's letter to Blum repudiating the purchase option — a period of only slightly more than four months. In the circumstances of this case, we hold that the period of delay was not unreasonable, and there was no abandonment of the purchase option by Blum during the period of delay. See *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob*, 370 Mass. 828, 835 (1976) (eight-month delay from the original closing date not unreasonable in view of the circumstances of the case and the conduct of the parties). See *Radley* v. *Johnson*, 25 Mass. App. Ct. 969, 971 (1988) (where facts are not in dispute the determination of what is a reasonable time is matter of law for the court).

What the Kenyons overlook is what this court made clear in *Limpus* v. *Armstrong, supra*: where simultaneous performance by both parties is contemplated, and where time is not of the essence and delay continues, either seller or buyer "might have assigned a reasonable time for the completion of the transaction, thereby making performance within that time of the essence of the contract." 3 Mass. App. Ct. at 22. This principle — that the party seeking to close a transaction too long delayed has but to give notice setting a date beyond which all rights will terminate — has been affirmed more recently in *Merry* v. *A. W. Perry, Inc.*, 18 Mass. App. Ct. 628, 630 (1984), and in *Curley* v. *Mobil Oil Corp.*, 860 F.2d at 1132-1133. See also *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob*, 370 Mass. at 834, where, as here, payments were accepted during the period of delay.

There remains the question of the effect to be given to counsel's letter of June 2, 1987. Notice to Blum that her rights under the option agreement had terminated was a repudiation of the contractual obligations of the Kenyons

under the purchase option, and, as in *Limpus* v. *Armstrong*, 3 Mass. App. Ct. at 22, that notice "made unnecessary any tender of performance or offer of performance" by Blum. See *Nichols* v. *Sanborn*, 320 Mass. 436, 438 (1946).

The judgment entered in the consolidated actions is reversed. Blum, having alleged in substance that she is ready, willing, and able to perform, is now entitled to a new judgment ordering specific performance of the purchase option in accordance with its terms and conditions. *Thibbitts* v. *Crowley*, 405 Mass. 222, 230 (1989); *Limpus* v. *Armstrong*, supra at 23. See G. L. c. 214, § 1A. In the Kenyons' action for declaratory relief there shall be a new judgment in the Probate Court declaring that Blum is entitled to specific performance.

*So ordered.*