ATLANTIC RICHFIELD COMPANY *vs.* ARMAND A. COUTURE & another.

Hampden.    March 10, 1976. — April 8, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Option.   Contract,* Option, For sale of real estate.   *Landlord and Tenant,* Option to purchase.   *Specific Performance.*

A lessee's failure to maintain the leased premises in good condition in breach of a covenant in the lease did not preclude it from exercising an option to purchase the premises. [233-234]

BILL IN EQUITY filed in the Superior Court on May 5, 1971.

Atlantic Richfield Co. *v.* Couture.

The suit was heard by *Moriarty,* J.
The case was submitted on briefs.
*Edward L. Donnellan* for the defendants.
*Robert E. Kubicek* for the plaintiff.

HALE, C.J.    This is a bill in equity by which the plaintiff (ARCO) seeks to enjoin the defendants (lessors) from prosecuting a summary process action and to secure specific performance of an agreement to convey real estate. The case was tried before a Superior Court judge who made "findings, rulings and order for decree" and entered a final decree ordering the lessors to convey the subject real estate. The lessors have appealed from that decree. The evidence is reported. As there does not appear to be any dispute as to the facts found by the judge, we summarize the judge's findings, which he later adopted as a statutory report of material facts.

On April 16, 1963, ARCO (then known as the Atlantic Refining Company) and the lessors entered into a lease concerning property in the town of Ludlow. Under the terms of that lease the lessors were required to demolish a house and build a gas station to the plaintiff's specifications. The term of the lease was twenty years, beginning on the first day of the month following the completion of the station.

The parts of the lease pertinent to the current controversy are: "...ATLANTIC shall maintain and keep in good order and repair the herein demised premises" and "if ATLANTIC defaults in the performance of any other of ATLANTIC'S covenants, obligations and conditions herein contained and such other default continues for a period of sixty (60) days after receipt from LESSOR by ATLANTIC of notice of such default, LESSOR ... shall have the right to declare this lease terminated, enter upon the demised premises, and take immediate possession thereof."

The lease also granted ARCO "the right and option to purchase, during the continuance of this lease, the demised premises and improvements now or hereafter

erected thereon for the sum of FORTY FIVE THOU-SAND DOLLARS ($45,000.00) less an amount computed on a pro rata basis at the rate of FIVE HUNDRED DOLLARS ($500.00) per year for the period from the beginning of the original term of this lease to the date LESSOR transfers to ATLANTIC title to said premises . . .."

Some time in the spring of 1967 the type of operation carried on at the leased premises began to change from a gas station business to a garage business. The station operator acquired a wrecker which he maintained on the premises and obtained a license to sell used cars on the property. He made an arrangement with the local police department whereby he was frequently called upon to tow damaged motor vehicles from the scenes of accidents to the leased premises, where some of those vehicles remained for substantial periods of time. The station became primarily an automotive shop, providing repair service, maintenance service, and inspection service, although oil, gasoline, parts, and accessories continued to be sold. The station became very successful and sold an exceptionally high volume of gasoline.

During the period beginning with the spring of 1967 and ending on February 1, 1971, the lessors complained orally to ARCO on several occasions concerning the appearance of the leased premises. Such complaints generally resulted in the removal of wrecked automobiles and solid waste. However, no substantial improvement was made in the generally dirty and unkempt appearance of the station and lot, and wrecked cars, used tires, and other debris usually reaccumulated following each complaint.

On February 1, 1971, the lessors' attorney notified ARCO in writing that the lessors intended ". . . to take the necessary legal steps to bring about a termination of . . . [the] lease." The reason stated for the termination was that ". . . the premises are not maintained and kept in good order, and . . . this constitutes a breach of the lease by . . . [ARCO]." The notice was received by ARCO on February 3, 1971.

By letter dated March 24, 1971, ARCO notified the les-

sors that it was exercising its purchase option in accordance with the provisions of the lease. On the following day another letter was sent informing the lessors of the name of an attorney who would represent ARCO at the closing. That letter also requested that the lessors arrange with the attorneys for a closing date on or before April 15, 1971.[1]

The lessors made no reply to either letter and on April 12, 1971, commenced an action of summary process, the prosecution of which was enjoined pending a determination of the present case.

The judge ruled that ARCO had breached its duty under the lease by allowing the property to become unsightly and unkempt. ARCO has not appealed from that ruling, and our disposition of this case does not require us to decide whether that ruling was correct.

The lessors contend that it was error for the judge to enter a decree for specific performance where ARCO was in breach of one of the covenants in the lease. They have invited our attention to *Freedman* v. *Walsh*, 331 Mass. 401, 406 (1954), where it was stated: "Specific performance is not a matter of absolute right. It ought not to be granted if it will result in imposing an undue hardship upon one party to an agreement or permit the other party to obtain an inequitable advantage. On the other hand, agreements are made to be performed, and relief should be given in the absence of special circumstances showing that it would be inequitable to do so." They argue that there are "special circumstances that negate the entry of a specific performance decree" and that the failure properly to maintain the leased premises resulted in harm to them and their property.

We believe that no such harm could have resulted in this case, as the exercise of the option to purchase required payment to the lessors of the full purchase price agreed to before any breach occurred. If the value of the property

---

[1] The lease provided for settlement within two months after written notice of the exercise of the option.

was adversely affected, it was ARCO which was injured, not the lessors. The decree does not result in any inequity to the lessors.

The lessors also argue in effect that he who seeks equity must do equity. See *New England Merchs. Natl. Bank v. Kann,* 363 Mass. 425, 428 (1973). However, the trial court has a reasonable range of discretion in determining whether to grant or deny specific performance. *Raynor v. Russell,* 353 Mass. 366, 367 (1967). *Kaplan v. Bessette,* 357 Mass. 233, 235 (1970). See also *Allen v. Rakes,* 359 Mass. 1, 6 (1971). As the exercise of the option does not result in hardship or in an inequitable advantage to either party (see *Freedman v. Walsh,* 331 Mass. at 406), the judge did not abuse his discretion by ordering specific performance.

The judge was correct in ruling that the lease was still in full force and effect on March 24, 1971, when the option was exercised. The notice of default was received by ARCO on February 3, 1971, and the sixty-day period following that notice, which by the terms of the lease had to elapse before the lease could be terminated, had not run. The option could have been exercised at any time prior to a termination of the lease. *Slater v. Easter,* 3 Mass. App. Ct. 757 (1975). Contrast *London v. Tebo,* 246 Mass. 360, 362 (1923), where specific performance was denied because the lessor had already entered for a breach of the lease.

The judge was also correct in ruling that ARCO's notice of its exercise of the option converted what had been a mere offer into a contract for purchase and sale which required the lessors to convey the leased premises to ARCO upon its payment of the required purchase price. *American Oil Co. v. Cherubini,* 351 Mass. 581, 585 (1967).

*Decree affirmed.*