Leisure Sports Investment Corporation *vs.*
Riverside Enterprises, Inc.

Middlesex.    March 13, 1979. — May 2, 1979.

Present: Hale, C.J., Rose, & Perretta, JJ.

*Option. Contract,* Option, Sale of real estate, Specific performance.
*Landlord and Tenant,* Option to purchase, Termination of lease.

Where a lessee gave notice of its exercise of an option to purchase the
premises under a provision of the lease after the lessor had given
notice that the lease was terminated effective fourteen days from
the lessee's receipt of the termination notice but before the expira-
tion of the fourteen-day-period, the lease had not been terminated
when the lessee exercised the option. [491-492]
A lessee's right to exercise an option to purchase the premises under
the lease was not lost because of its breach of the lease provisions
where there was no express condition in the lease that the lessee
not be in default of any of the lease provisions in order to exercise
its option. [492-493]

Civil action commenced in the Superior Court on
June 3, 1977.

The case was heard by *Dimond, J.,* on a motion for
summary judgment.

*Bernard P. Rome (Alice M. Vogler* with him) for the
defendant.

*Raymond J. Brassard (Stuart T. Freeland* with him) for
the plaintiff.

Hale, C.J. This is an appeal by the lessor, Riverside
Enterprises, Inc. (Riverside), from a summary judgment
ordering specific performance of an agreement to convey
the leased premises to its lessee, Leisure Sports Invest-
ment Corporation (Leisure). On January 5, 1974, River-
side and Leisure entered into a five and one-half year
lease which contained an option to purchase the premises

and personal property located thereon. The option clause, set out in pertinent part in the margin,[1] provided for exercise of the option during the term of the lease but not later than May 30, 1979. At the time the lease was executed and delivered, Leisure paid a sum in cash and delivered to Riverside two notes as rent.[2] The option clause provided that the cash payment and any payments on the notes would be credited against the purchase price if the option should be exercised.

On October 18, 1974, Leisure filed a voluntary petition under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701 et seq. (1976), for an arrangement of its affairs. The plan of arrangement was approved, Leisure was discharged from its unsecured debts (which included the two notes), and the holders of the notes were paid small dividends on their claims in full settlement. On February 12, 1975, the Bankruptcy Court determined that the lease was in full force and effect.[3]

---

[1] "During the term of this lease, the Lessee and/or assigns shall have the sole right and option to purchase the demised premises, including the buildings and improvements thereon, and any and all tangible personal property owned by the Lessor located therein or thereon, for a total purchase price of $285,000 to be paid to Lessor in accordance with the provisions of this paragraph . . . . The option to purchase must be exercised, if at all, by Lessee by certified or registered mail to Lessors postmarked on or before May 30, 1979. A closing of said sale shall occur at the place designated by Lessee thirty (30) days from the mailing of said exercise of option unless some other time shall be mutually agreed in writing . . .

"Said purchase price shall be paid as follows: (a) Any amount paid pursuant to paragraph 4(a) - (c). (b) A purchase money mortgage note in the amount of $250,000 maturing in seven (7) years after the date of closing with interest thereon at the rate of one percent (1%) over the retail prime rate of The First National Bank of Boston as the same shall be from time to time . . . . Said note and mortgage shall be subordinate to any note or mortgage of the Lessee to others necessary or desirable for the completion of the transaction. (c) The balance in cash to be paid at the closing."

[2] The two notes were subsequently assigned by Riverside to two of its principals.

[3] There were further proceedings in the Bankruptcy Court which are unnecessary to detail in deciding this case.

More than two years later, on April 28, 1977, Riverside sent Leisure notice that the "lease is terminated effective 14 days from receipt of this notice," giving as grounds nonpayment of the two notes and the filing of the Chapter XI petition. On May 3, 1977, Leisure sent Riverside notice of the exercise of its option to purchase. Leisure subsequently notified Riverside and the holders of the notes that, in connection with the exercise of the option, Leisure would pay the two notes in full with interest.

On June 2, 1977, Leisure tendered performance and offered to pay off the notes. Riverside refused to convey the property, and Leisure brought the present action. The ensuing judgment for specific performance is the subject of this appeal.[4]

1. The ruling that the lease had not been terminated at the time Leisure exercised the option was correct. The default clause, set out in full in the margin,[5] requires the

---

[4] The judgment was not stayed, and the premises have been conveyed to Leisure by Riverside pursuant to that judgment. However, the order denying the stay provided for the reconveyance of the premises should the judgment be held to be erroneous.

[5] "Provided, however, and this lease is made upon the express condition that if default shall be made in the payment of said rent or any part thereof or of other sums of money for charges of Lessor made under the provisions therefor in this lease contained, at the times and places herein fixed for the payment thereof and said default shall continue ten (10) days and Lessor gives Lessee written notice thereof, or if default shall be made in any other of the covenants herein contained on the part of said Lessee to be kept and performed and if such default shall continue for a period of twenty (20) days after with written notice to Lessee, or if said Lessee shall make an assignment for the benefit of creditors, or file a voluntary petition in bankruptcy or insolvency, or shall be adjudged bankrupt, or if a permanent receiver of the property of Lessee shall be appointed or said Lessee shall be declared bankrupt or insolvent according to law, or if the estate hereby created shall be deserted or vacated, then and in any of the said cases, notwithstanding any license or waiver of any former breach of covenant or consent in a former instance, it shall be lawful for Lessor thereupon or at any time thereafter, while such default, assignment, insolvency, legal proceedings, desertion, vacancy or neglect shall continue, or be in effect to terminate this lease and all of Lessee's interest

lessor to give written notice of termination and the effective date thereof before the lease shall expire. In its notice of termination of April 28, 1977, Riverside expressly set the termination of the lease "14 days from the receipt of this notice." Notice by Leisure of exercise of the option was given before expiration of the fourteen days and thus before the termination of the lease. *Atlantic Richfield Co.* v. *Couture*, 4 Mass. App. Ct. 230, 234 (1976).

2. Also correct was the ruling that Leisure's right to exercise the option was not lost because of a breach of the lease provisions by nonpayment of the notes and by filing the Chapter XI petition.[6] That we assume, without deciding, that Leisure was in breach of the lease,[7] does not compel the conclusion that the judge erred in awarding specific performance. *Atlantic Richfield Co.* v. *Couture*, 4 Mass. App. Ct. at 233-234. But see *Gannett* v. *Albree*, 103 Mass. 372, 374-375 (1869); *Squire* v. *Learned*, 196 Mass. 134, 136 (1907); *Saxeney* v. *Panis*, 239 Mass. 207, 209 (1921), each of which involved suits for specific performance of covenants to renew. There was no express condition in the lease that the lessee not be in default of any of the lease provisions in order to exercise its option. Compare *Derman Rug Co.* v. *Ruderman*, 4 Mass. App. Ct.

---

hereunder by giving written notice to Lessee of such termination and of the effective date thereof (and, such notice having been given, this lease shall cease and expire on the date named therein), it being expressly understood and agreed that this lease shall not continue or inure to the benefit of any assignee, receiver or trustee in bankruptcy, excepting at the option of Lessor."

[6] Riverside has also argued that various other breaches of the lease, including failure to pay utilities, also prohibited Leisure's exercise of the option. We note, as did the judge, that none of these alleged breaches was asserted as a ground for termination in the notice of April 28, 1977. In any event, the manner in which we deal with those asserted grounds applies equally to the miscellaneous breaches.

[7] The approach we have chosen makes it unnecessary for us to decide whether the judge was correct in finding that filing of the Chapter XI petition did not constitute a breach for which termination could be had as of April 28, 1977.

437, 440 (1976). Riverside contends, however, that compliance with the lease provisions was an implied condition that attached to the exercise of the option. Written agreements are presumed to express the parties' final arrangements (see *Finnerty* v. *Reed*, 2 Mass. App. Ct. 846, 847 [1974]), and an omission of a term in a written lease is evidence that there was no such understanding. *Snider* v. *Deban*, 249 Mass. 59, 65 (1924). *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. 697, 701 (1964). The judge, in declining to read into the lease an implied condition such as that contended for by Riverside, was justified in considering, as he did, not only the language used but also the purpose for the lease provisions. See *Connolly* v. *Haines-Ce Brook Inc.*, 277 Mass. 423, 427 (1931). We find no error in his refusal to read the implied condition into the lease by implication where the implication is less than "clear and undoubted." *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. at 701, and cases cited.

Specific performance is a matter within the sound discretion of the judge. *Raynor* v. *Russell*, 353 Mass. 366, 367 (1967). *Kaplan* v. *Bessette*, 357 Mass. 233, 235 (1970). "It ought not to be granted if it will result in imposing an undue hardship upon one party to an agreement or permit the other party to obtain an inequitable advantage. On the other hand, agreements are made to be performed, and relief should be given in the absence of special circumstances showing that it would be inequitable to do so." *Freedman* v. *Walsh*, 331 Mass. 401, 406 (1954). The record before us does not reveal such special circumstances as would make it unjust or inequitable for the judge to award specific performance in this case. Riverside received everything it bargained for under the option agreement.

3. The judge was also correct in ruling that the option was properly exercised and that a proper tender of the purchase price and accompanying documents was made on June 2, 1977. See *American Oil Co.* v. *Cherubini*, 351 Mass. 581, 585 (1967); *Hurd* v. *Cormier*, 358 Mass. 736,

738-739 (1971); *Christian* v. *Giard,* 3 Mass. App. Ct. 770 (1975).

*Judgment affirmed.*