**SHELL OIL COMPANY, Plaintiff,**

v.

**Mary B. HENNESSY, Administratrix of the Estate of Charles B. Hennessy, Frank J. Middleton, and David J. Carvalho, Defendants.**

Civ. A. No. 84–2721–Y.

United States District Court,
D. Massachusetts.

July 7, 1986.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

In this action, the plaintiff Shell Oil Company ("Shell") sues the defendants Mary B. Hennessy ("Hennessy"),[1] Frank J. Middleton ("Middleton") and David J. Carvalho ("Carvalho") for breach of contract (Counts I and II) and sues Middleton and Carvalho alone for unfair and deceptive practices in violation of Mass.Gen.Laws ch. 93A, § 11 (Count III). By its motion for partial summary judgment, Shell now seeks to compel Middleton and Carvalho to convey certain property for a consideration of $29,800.00. For the reasons set forth below, the Court allows the pending motion for partial summary judgment, albeit not in the form sought by Shell.

### I.

The parties do not dispute the following facts. On May 16, 1963, Shell and Charles Hennessy entered into a fifteen year lease for land in Brockton upon which Shell built an automobile service station. The lease specified a rent of $160.00 per month and provided Shell with three additional option periods of five years at the same rent. The lease also granted Shell an option to purchase the property for $29,800.00 as well as a right of first refusal should Charles Hennessy locate another buyer.

On February 19, 1979, Shell gave Mary Hennessy, then administratrix of Charles' estate, notice of its desire to extend the lease. On March 15, 1979, Mary responded through her accountant with a request that Shell exercise its option to purchase. On March 29 of the same year, Shell declined to exercise its option to purchase, commenting that "it does not appear" that Shell would exercise its first refusal option.[2] On May 3, 1979, Mary wrote back, again through her accountant, agreeing to the extension of the lease, and stating her understanding "that she may sell this land at any time with your company's approval."

On November 19, 1979, Mary Hennessy executed a deed conveying the leased premises to defendants Middleton and Carvalho for $18,000.00 "subject to the existing leases." Shell first learned of this sale on November 26, 1979, in a letter from Middleton and Carvalho and, on December 4, 1979, notified them that it "cannot accept your letter as notice of new ownership." On June 14, 1984, Shell gave Middleton and Carvalho notice of its intent to exercise its purchase option but Middleton and Carvalho refused either to sell or to convey the property back to Mary Hennessy.

### II.

Middleton and Carvalho raise three defenses. None, however, raise the genuine

---

1. Mary is sued in her capacity as Administratrix of the estate of her husband, Charles.

2. In relevant part the letter states:

   Our analysis has caused us to conclude that we do not wish to exercise the option and purchase the property at this time. Much as we would like to comply with Miss Hennessy's request, we are unable to at this time.

   We wish to point out that there is nothing in the lease to prevent Miss Hennessy from selling the property to some other persons. Shell does have a right of first refusal to meet the offer price if the property is marketed, but it does not appear that we would purchase the property in this event either. We suggest that if she really wants to get rid of the property that a concerted effort be made to sell it to someone else.

disputes of material fact required by Fed. R.Civ.P. 56 to avoid summary judgment. *See Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). To the contrary, each of the defenses raised may be resolved as matter of law on undisputed facts.

■ Middleton and Carvalho first allege that Shell waived its right of first refusal in the letter of March 29, 1979. To the contrary, the Court rules that Shell's letter effectively preserved its rights under the lease: "Shell does have the right of first refusal to meet the offer price if the property is marketed". Moreover, the Court further rules the second statement, "but it does not appear that we would purchase the property in this event either," being of indefinite intent, indefinite time, and indefinite effect cannot constitute a waiver as matter of law.

■ Middleton and Carvalho next argue that the lease was unconscionable at the time of its making and is void as against public policy. Both arguments are predicated on unequal bargaining power and the fact that Shell now stands to reap an enormous benefit. Because there is no clear, all purpose definition of "unconscionability," nor could there be, unconscionability must be determined on a case by case basis, giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party. *Zapatha v. Dairy Mart, Inc.,* 381 Mass. 284, 292–293, 408 N.E.2d 1370 (1980) (extending the Uniform Commercial Code standard of unconscionability by analogy to dealings between a franchisee and franchisor). *See also Scheele v. Mobil Oil Corp.,* 510 F.Supp. 633, 637 (D.Mass.1981). At the

time of the execution of the instant lease, neither Middleton nor Carvalho were parties to the action. They had not then nor do they have now the requisite standing to assert unconscionability. But even were this not so, Middleton and Carvalho neither allege nor disclose any element commonly associated with unconscionability: *viz.* duress in the course of negotiations, incapacity on the part of Charles Hennessy, fraud, misrepresentation, bad faith, oppression, unfair surprise, or undue influence. Rather, the Court, on this record, has no reason to doubt either the good faith of the parties or the substantial fairness of the lease when made.

Thus, it is undisputed that Mary Hennessy was without legal authority to act on Middleton and Carvalho's third-party offer to purchase, and they indisputably took the property subject to the conditions of the lease. Still, one question remains:[3] does the doctrine of laches impair Shell's right to equitable relief because it waited four and one half years to challenge the conveyance? On the one hand, Shell admits that it learned of the sale in November, 1979, but first gave notice of its intent to exercise its purchase option in June, 1984. *See Myers v. Salin,* 13 Mass.App.Ct. 127, 431 N.E.2d 233 (1982), further *rev. denied,* 385 Mass. 1103, 441 N.E.2d 1043 (1982), (a delay of two years in bringing an action for relief where defendant constructed a house was barred by laches); *see also Weinstein v. Tariff,* 356 Mass. 738, 255 N.E.2d 595 (1970). On the other hand, Shell ought be entitled to assume that its option to purchase remains viable under the protection of the lease. *American Oil Co. v. Cherubini,* 351 Mass. 581, 222 N.E.2d 892 (1967) (affirming specific performance of an agreement in a lease to convey).

---

**3.** Advancing yet a fourth argument, Middleton and Carvalho rely on *Shell Oil Company v. Marinello,* 63 N.J. 402, 307 A.2d 598 (1973), *cert. denied,* 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974), *superseded* by *statute* as stated in *Graeber v. Mobil Oil Corp.,* 614 F.Supp. 268 (D.N.J.1985), where the court found a provision giving Shell an absolute right to terminate a

franchise agreement on ten days notice void as against public policy. This purported defense is utterly immaterial. The situation in the instant case is different because 1) the lease requires 45 days notice, not ten, for termination and 2) the dispositive issue here is the option to purchase, not the termination clause.

## III.

With this authority in mind, the Court recognizes that in Massachusetts, even where a defendant is utterly defenseless against a contract claim, the remedy of specific performance sought by Shell in the present circumstances is equitable in nature and may be granted only in the Court's sound discretion. *Gulf Oil Corporation v. Haufler,* 16 Mass.App.Ct. 937, 450 N.E.2d 1096 (1983); *Leisure Sports Inv. Corp. v. Riverside Enterprises, Inc.,* 7 Mass.App.Ct. 489, 493, 388 N.E.2d 719 (1979).

■ In light of these principles, the Court rules that, while certain factual issues remain, the undisputed record before the Court is ample to fashion an equitable remedy herein. In the four and one half years during which Shell sat on its rights, it bore none of the economic risks attendant on property ownership yet stands to derive substantial economic gains from specific performance of the lease option. Likewise, Shell's delay may have lulled Middleton and Carvalho into making improvements to the premises beyond normal maintenance—improvements which would not be reflected in or recaptured by the $29,800 purchase price. To order a conveyance to Shell on the original terms, therefore, would be inequitable due to the doctrine of laches. Likewise, to foreclose all opportunity for specific performance where the conveyance to Middleton and Carvalho violated the Hennessy-Shell lease and Middleton and Carvalho clearly hold subject to the provisions of that lease would be equally inequitable. Accordingly, Shell may have specific performance at the price which bears the same relationship to the fair market value of the premises at the time of judgment that $29,800 bore to the fair market value at the time of the conveyance to Middleton and Carvalho plus the out-of-pocket cost of fixtures added to the premises by the present owners. Shell shall have twenty days from the date of this Order to file with the Court a statement of its intention concerning specific performance. If it desires specific performance in accordance with the terms set forth above, the matter shall proceed to trial to determine any disputed matters of valuation. If not, or if it fails to file the requested statement, specific performance will be denied and Shell may proceed to trial to enforce its other remedies.

SO ORDERED.