In re BANK OF NEW ENGLAND CORPORATION, Debtor.

Ben S. BRANCH, Trustee, Plaintiff,

v.

SEI CORPORATION, Fleet Data Processing Corp. f/k/a Fleet/Norstar Services Corporation and Fleet Services Corporation f/k/a Fleet/Norstar Services Corporation f/k/a Norstar Services Inc., f/k/a Norstar Data Services Inc., f/k/a Ubny Data Services, Inc., Defendants.

Bankruptcy No. 91–10126–WCH.
Adversary No. 95–1278

United States Bankruptcy Court,
D. Massachusetts.

June 4, 1997.

James McGinley, Edwards & Angell, Boston, MA, for Fleet.

Robin Russell, Andrews & Kurth, Dallas, TX, for Trustee.

**DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT AS TO COUNT VI OF THE AMENDED COMPLAINT**

WILLIAM C. HILLMAN, Bankruptcy Judge.

*I. Introduction*

Bank of New England Corporation ("BNEC"), the holding company for a variety of banking and non-banking subsidiaries,[1] filed a petition under Chapter 7 of Title 11 on January 7, 1991. Dr. Ben S. Branch was elected as the Chapter 7 Trustee (the "Trustee").

The Trustee commenced this proceeding objecting to the claim of SEI Corporation ("SEI") and seeking a declaratory judgment as to the rights of the Trustee and certain defendants under a contract more particularly described below. SEI answered, offered affirmative defenses, and counterclaimed. Defendants Fleet Data Processing Corp. ("Fleet Data") and Fleet Services Corporation ("Fleet Services") (collectively "Fleet") answered. The Trustee responded to the SEI counterclaim.

The Trustee's amended complaint is in six counts, the first five of which relate to the SEI claim and are not implicated by the present motions. Count VI seeks a judgment declaring that, to the extent that the Trustee is liable to SEI, Fleet is required to indemnify him. The Trustee also seeks payment of his attorneys' fees.

---

**1.** *See In re Bank of New England Corporation,* 134 B.R. 450, 471 (Bankr.D.Mass.1991) (organizational chart).

The Trustee moved for summary judgment against Fleet on Count VI of the Complaint.[2] Fleet filed an opposition and a cross motion. I conducted a hearing and took the matter under advisement. The parties have filed a number of pre- and post-hearing memoranda of law.

> Fed.R.Civ.P. 56(c) provides, in part, that:
>
> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

There are no factual disputes, leaving the sole inquiry before me whether either moving party is entitled to judgment as a matter of law.

## II. Findings of Fact

On July 12, 1991, The Trustee and Fleet entered into an Agreement to Assume and Assign Software Agreements (the "Assignment Agreement") in which Fleet agreed to assume certain software agreements and to pay BNEC $600,000. Section 2 of the Assignment Agreement provides that:

> "Fleet agrees to assume full responsibility to the licensors and vendors under the Software Agreements for any and all payments due or which may become due from the Trustee, whether prior to or subsequent to the effective date of the assignment of the Software Agreements hereunder, and for any and all other obligations or responsibilities of the Trustee pursuant to the Software Agreements and to indemnify and hold harmless the Trustee from and against any and all claims, damages, liabilities, costs (including reasonable attorneys' fees) or expenses resulting from or arising under the Software Agreements

at any time from and after the effective dates of such Agreements." [3]

The Assignment Agreement also contains a choice of law clause adopting the laws of the Commonwealth of Massachusetts and an integration clause both of which state as follows:

> "7.3 *Entire Agreement.* This Agreement (including the Schedules) contains the entire agreement between the parties with respect to the transactions contemplated hereby and the subject matter hereof and supersedes all prior or contemporaneous negotiations, understandings and agreements, written or oral, with respect thereto.
>
> 7.4 *Governing Law.* This Agreement shall be governed by, and shall be construed and interpreted in accordance with, the internal laws of the Commonwealth of Massachusetts applicable to agreements made and to be performed wholly within such State, without giving effect to the conflict of laws principles thereof."

On July 18, 1991, the Trustee filed a motion to approve the Assignment Agreement. I granted the motion on August 9, 1991.

Subsequent to the filing of motion to approve, Fleet decided that it would not assume the SEI agreement. On July 25, 1991, Fleet and the Trustee executed an amendment (the "Amendment") making changes to the Assignment Agreement. First, the SEI Agreement was deleted from the definition of "Software Agreements" without a corresponding change in the consideration. Second, the Amendment modified the language of Section 2 quoted above by adding the words "and the SEI Agreement" after the words "Software Agreements" four times, so that it now reads (with the added words emphasized):

> "Fleet agrees to assume full responsibility to the licensors and vendors under the

---

**2.** In support of his motion, the Trustee filed a Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts. While the District Court rule does not apply in this court, the statement is useful as summary of the record evidence upon the Trustee relies in his motion. *See* Fed. R. Bankr.P. 7056, which

makes Fed.R.Civ.P. 56 applicable in adversary proceedings.

**3.** One of the "Software Agreements" covered by the Assignment Agreement was a contract between BNEC and SEI titled a Trust 3000 Dedicated Service Agreement (the "SEI Agreement") dated January 12, 1990.

Software Agreements *and the SEI Agreement* for any and all payments due or which may become due from the Trustee, whether prior to or subsequent to the effective date of the assignment of the Software Agreements *and the SEI Agreement* hereunder, and for any and all other obligations or responsibilities of the Trustee pursuant to the Software Agreement *and the SEI Agreement* and to indemnify and hold harmless the Trustee from and against any and all claims, damages, liabilities, costs (including reasonable attorneys' fees) or expenses resulting from or arising under the Software Agreements *and the SEI Agreement* at any time from and after the effective dates of such Agreements."

The Trustee also determined that he would reject the SEI Agreement. To obtain the required authorization for the Amendment and rejection, on July 26, 1991 the Trustee filed a motion "to Amend Prior Motion for Approval of Assumption and Assignment of Certain Executory Contracts and to Reject Contract Which is Subject of Proposed Amendment" (the "Amendment Motion"). In support of his Amendment Motion, the Trustee stated:

"The Trustee believes that removal of the SEI Agreement from the list of Software Agreements to be assumed and assigned to Fleet, and the rejection of the SEI Agreement pursuant to Section 365(a) of the Code are necessary to carry out the intent of the parties to the Agreement and to secure the cooperation of Fleet in its implementation. The Trustee also believes that for this reason, because the consideration to be paid by Fleet will continue to be $600,000, because rejection of the SEI Agreement will eliminate the possibility of further liability in the future, and because Fleet has agreed in the Amendment to accept responsibility for any liability under the SEI Agreement preceding the rejection, the actions proposed in this Motion

are in the best interest of the Debtor's estate and its creditors and represent a prudent and proper exercise of business judgment."

On October 29, 1991, I entered an order granting the Amendment Motion. Thereafter SEI filed a general unsecured claim (the "Claim") seeking (1) $24,815.55 in damages for pre-petition services rendered under the SEI Agreement; (2) $250,000.00 for pre-petition services pursuant to alleged oral agreements between SEI and BNEC; and (3) $7,590,000.00 in damages resulting from rejection of the SEI Agreement, for a total of $7,864,815.55.

## III. Discussion and Conclusions of Law

The Trustee contends that the language of the Amendment is sufficient to obligate Fleet to indemnify for all of the elements of the Claim, the greatest portion which is for rejection damages.

Fleet's response attacks the Trustee's position on two grounds. First, Fleet contends that it indemnified only the Trustee and not the estate. Second, Fleet contends that the Amendment does not obligate it to indemnify for rejection damages.

### A. The Trustee as Distinct from the Estate

Fleet contends that the scope of the indemnification does not include any obligations of the estate given the use of the word Trustee, a term which is unambiguous. To read the word Trustee as encompassing the estate, claims Fleet, is to misread the contract.

In support of its argument, Fleet directs the Court to various provisions of the Bankruptcy Code which distinguish between a trustee and the estate. *See* 11 U.S.C. §§ 365(k) [4], 541(a) [5], § 323 [6]. Fleet further emphasizes that the Trustee has certain fidu-

---

**4.** "Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."

**5.** "The commencement of a case under section 301, 302 or 303 of this title creates an estate."

**6.** "(a) The trustee in a case under this title is the representative of the estate.

"(b) The trustee in a case under this title has capacity to sue and be sued."

ciary duties for breach of which he can be sued on behalf of the estate or a creditor. *See Lopez–Stubbe v. Rodriguez–Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 936–37 (1st Cir.1988); *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 621–22 (1st Cir.1988). Fleet lastly contends that to read the term Trustee in the Assignment Agreement, as amended, to include the estate would be to render meaningless the above-cited statutory provisions in contravention of the well-established rules of statutory construction. *See In re Wang Laboratories, Inc.* 164 B.R. 401, 404 (Bankr.D.Mass.1994).

The Trustee disputes the applicability of the above-cited statutes to this proceeding and contends that the term Trustee as used in the Assignment Agreement, as amended, unambiguously incorporates the estate. Whether this issue is considered a question of contract interpretation under Massachusetts law or a question of statutory construction under the Bankruptcy Code, I agree.

### 1. Contract Interpretation

■ Under Massachusetts law:

"[S]o long as the words of an agreement are plain and free from ambiguity, they must be construed in their ordinary and usual sense. In the search for the plain meaning, a court should consider 'every phrase and clause ... [in light of] all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties.' In short, '[t]he interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of circumstances of the transaction.' "

*Boston Edison Co. v. Federal Energy Regulatory Commission*, 856 F.2d 361, 365 (1st Cir.1988) (citing *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 494 N.E.2d 374, 378 (1986) and *Thomas v. Christensen*, 12 Mass.App.Ct. 169, 422 N.E.2d 472, 476 (1981)).

Based upon the foregoing, in order to determine whether the word Trustee as used in the Assignment Agreement, as amended, is free from ambiguity, I must look at the document in its entirety and consider the circumstances of the Assignment Agreement, as amended.

■ Fleet and the Trustee executed the Assignment Agreement, as amended. The Assignment Agreement, as amended, explained that the Trustee was assigning his right, title and interest in the Software Agreements to Fleet. As consideration, Fleet was to pay the Trustee $600,000. As further consideration, Fleet indemnified the Trustee for any of the Trustee's obligations arising under the Software Agreements as of their effective dates.

An important starting point for reviewing this transaction is the Bankruptcy Code itself. The Code explains that when a debtor files a petition for relief, an estate is created. 11 U.S.C. § 541. The estate consists of all legal or equitable interest of the debtor. Id. The appointed trustee is the representative of the estate, 11 U.S.C. § 323, and may administer the property of the estate. 11 U.S.C. § 704. At no time, however, does a trustee personally accede to a debtor's interest in or title to property of the estate.

Given this framework, it is inconceivable that the parties contemplated the word Trustee as used in the Assignment Agreement, as amended, to be limited to the Trustee personally. Although the Trustee was the proper party to assume and assign the Software Agreements, 11 U.S.C. § 365, he personally had no right, title or interest in the Software Agreements. The Summary of the Software Licenses and Related Agreements appended to the Assignment Agreement reflects that all of the agreements were between the Debtor and various third parties. The Trustee is not listed as a party to any of the Software Agreements.

Moreover, although the Assignment Agreement, as amended, stated that Fleet would pay the Trustee $600,000 for the Software Agreements, there is no suggestion those funds were paid to the Trustee personally. Lastly, because the Trustee was not appointed until 1991, it would have made no sense for Fleet to give indemnification from January of 1990 if that indemnification was to be limited only to the Trustee personally.

Based upon the use of the word Trustee in the Agreement, I conclude that the parties intended the word Trustee to be used interchangeably with the word estate. As such, the word is unambiguous. The alternate suggestion of its interpretation, that the word meant the Trustee personally, would render the Assignment Agreement, as amended, unenforceable: the Trustee had no personal interest in the Software Agreements and could not have accepted estate funds for personal use without violating the terms of his bond. Therefore, I hold that under Massachusetts law, the plain meaning of the word Trustee in the Assignment Agreement, as amended, includes the estate.

### 2. Statutory Construction

■ Even if one were to analyze the Assignment Agreement, as amended, solely as an issue arising under a proper reading of Title 11, the result would be the same. This is a principle of bankruptcy law which is now more than a century old:

> "Actions against the receiver are in law actions against the receivership or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands."

*McNulta v. Lochridge*, 141 U.S. 327, 332, 12 S.Ct. 11, 13, 35 L.Ed. 796 (1891).

This principle has been applied to bankruptcy trustees. *See Valdes v. Feliciano*, 267 F.2d 91, 94 (1st Cir.1959); *McRanie v. Palmer*, 2 F.R.D. 479, 481 (D.Miss.1942). There is nothing in the Bankruptcy Code provisions cited by Fleet, or in their legislative history, to indicate that Congress intended to change the *McNulta* rule.[7] The Supreme Court

"has been reluctant to accept arguments that would interpret the [Bankruptcy] Code ... to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."

*Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

Therefore, when Fleet assumed liability to the Trustee it was for the benefit of the estate and the distinction which Fleet seeks to make does not exist.

Of course, Fleet is correct is noting that a trustee who violates his or her duty as a fiduciary is liable for the harm caused, but that is not the issue here.

### B. The Inclusion of Damages for Rejection in the Indemnity

■ In a second argument directed to the element of the claim involving damages for rejection, Fleet asks me to consider the provision of the Amendment Motion quoted above in construing the language of the Amendment itself.

Under the language of Section 2 as amended, Fleet assumes full responsibility for "any and all claims, damages, 'liabilities, costs (including reasonable attorneys' fees) or expenses resulting from or arising under ... the SEI agreement." However, in the Amendment Motion, the Trustee urged me to authorize the Amendment in part "because Fleet has agreed in the Amendment to accept responsibility for any liability under the SEI Agreement *preceding the rejection* ...." Fleet would have me look to that language of the Amendment Motion to explain away the otherwise totally inclusive "all claims" language of the Assignment Agreement as changed by the Amendment.[8]

---

7. Although Fleet draws particular attention to 11 U.S.C. § 365(k), that section is not at issue in this case. Moreover, although the statute relieves both a trustee and the estate from liabilities under a lease following assignment, it is unclear that Congress intended to refer to the trustee personally as opposed to as the representative of the estate. Indeed the purpose of the statute is to change the common law rule that "[a] party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty." *See In re Washington*

*Capital Aviation & Leasing*, 156 B.R. 167, 175 (Bankr.E.D.Va.1993). It could be that the only reason to insert the word trustee in the statute was because if a party were to attempt to bring an action against the estate, the party would have to name the trustee.

8. Fleet appears to make a veiled argument that the Trustee is judicially estopped from taking a position in his Motion for Summary Judgment which is contrary to the one taken in the Amended Motion. Because Fleet did not ask me to consider judicial estoppel and because it is not

To this argument, the Trustee responds that the terms of the indemnification agreement are clear and that the language of the Amended Motion constitutes inadmissible parole evidence.

■ The Trustee is correct. Under Massachusetts law, when a document contains the integration clause quoted above, there is a presumption that the document is a final and full expression of the parties' agreement. *Leisure Sports Inv. Corp. v. Riverside Enterprises Inc.,* 7 Mass.App.Ct. 489, 493, 388 N.E.2d 719 (1979). If an agreement is fully integrated, the parole evidence rule prohibits the introduction of extrinsic evidence of prior or contemporaneous written or oral agreements to vary or contradict the terms of the agreement. *Kobayashi v. Orion Ventures, Inc.,* 42 Mass.App.Ct. 492, 496, 678 N.E.2d 180, 184 (1997).

■ Extrinsic evidence, however, may be introduced to explain ambiguous language. In that regard, the Massachusetts Appeals Court stated:

> "[T]he language of a contract need not be ambiguous on its face in order that extrinsic evidence may be admitted. When the written agreement, as applied to the subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not contradicting or changing its terms. Expressions in our cases to the effect that evidence of circumstances can be admitted only after an ambiguity has been found on the face of the written instrument have reference to evidence offered to contradict the written terms."

*Keating v. Stadium Management Corp.,* 24 Mass.App.Ct. 246, 249, 508 N.E.2d 121, 123 (1987) (citations omitted), *review denied* 400 Mass. 1104, 511 N.E.2d 620 (1987) (quoted with approval in *Boston Car Co., Inc. v. Acura Automobile Div., American Honda Motor Co.,* 971 F.2d 811, 815 (1st Cir.1992)).

Under this framework, I first turn to the Assignment Agreement, as amended, which contains an integration clause in paragraph 7.3. Neither party contends that the integration clause is invalid. As all of the pleadings appear to have been contemporaneous, I cannot consider the Amended Motion as evidence to alter or contradict the terms of the Assignment Agreement, as amended. Fleet asks me to consider the Amendment Motion to support its argument that the indemnification clause is restricted to damages arising up to the time of rejection. Such an interpretation would alter the terms of the Assignment Agreement, as amended, and under the parole evidence rule, I therefore cannot admit such evidence.

■ I next turn to whether the following language is uncertain or equivocal:

> "... to indemnify and hold harmless the Trustee from and against any and all claims, damages, liabilities, costs (including reasonable attorneys' fees) or expenses resulting from or arising under ... the SEI Agreement ..."

I have previously indicated that I consider "all" to be a universally encompassing term. *In re Legal Data Systems,* 135 B.R. 199, 201 (Bankr.D.Mass.1991). I now add to that conclusion the further opinion that "all claims" is neither uncertain nor equivocal. Because, I find no language in the above-quoted passage uncertain or equivocal, I need not look beyond the four corners of the Assignment Agreement, as amended.

As a result, I find that the claims indemnified against include the rejection damages.

### C. Inclusion of Attorneys' Fees

■ The same reasoning which supports the previous conclusion leads inevitably to another: that the Trustee's attorneys' fees and expenses are included within the scope of the indemnity.

### IV. Decision

Based upon the foregoing, Fleet's cross motion for summary judgment will be denied.

---

apparent that Fleet could prevail on such a claim, I decline to consider the argument. *Fed-eral Deposit Insurance Corporation v. Houde,* 90 F.3d 600, 607 (1st Cir.1996).

The Trustee's motion for summary judgment will be granted as to Count VI.

A separate order will enter.