Velis, J.
The plaintiffs commenced this action alleging that the defendants breached provisions of sales agreements and violated G.L.c. 93A. Specifically, the plaintiffs allege that the defendants failed to comply with contract provisions with respect to hiring an appraiser so that they could purchase the business in question. For the following reasons, this court orders that judgment enter in favor of the plaintiffs with respect to the breach of contract claims, and that judgment enter in favor of the defendants with respect to the G.L.c. 93A claims.

FINDINGS OF FACT

In 1969, Donald Dawson’s father established Dinny’s Tavern, located at 251 Lincoln Street, Worcester. Over the following years, Dinny’s Tavern, as well as its liquor license, fixtures, and other necessary assets, were controlled and owned by Dinny’s Restaurant, Inc. All ownership rights to Dinny’s Tavern and Dinny’s Restaurant, Inc. were subsequently transferred to Donald Dawson’s mother, Marilyn Dawson.
On August 9, 1982, Marilyn Dawson sold, by way of a sales agreement, all of her right, title and interest in Dinny’s Tavern and Dinny’s Restaurant, Inc. to the defendant Paul Shea. At this time, Paul Shea organized PCB, Inc. to acquire and operate Dinny’s Tavern and the other assets of Dinny’s Restaurant, Inc. On December 30, 1983, the parties entered into a supplemental sales agreement.
In both the original sales agreement and the supplemental agreement, Marylin Dawson, her daughter Jane Dawson, and Donald Dawson reserved the right to repurchase Dinny’s Tavern and related assets for a fair and reasonable price after the expiration of ten years. The original sales agreement stated that in the event that a party exercised its repurchase option, the defendants agreed to take back a mortgage "not to exceed 80% of the agreed sales price.” The supplemental agreement provided that in the event that a party exercised its re-purchase option, once a sales price is agreed on, the prime rate at the time was to be pre-computed and added to the sales price, and that the Plaintiffs would receive a 20% discount on the total figure.
The supplemental agreement also provided that in the absence of an agreement as to the fair and reasonable price, each party would have an appraisal performed by:
[a] qualified realtor or person familiar with the liquor business and a mean will be established between the appraisals which will be the basis for the sales price ... In the event the parties cannot agree as to a figure, the appraisers shall pick a third-party independent appraiser whose opinion will be binding on all parties.
In August of 1992, the plaintiffs notified the defendants that they wished to exercise their re-purchase option. Subsequently, the parties had a discussion regarding appraisers and could not come to an agreement. The defendants then hired as an appraiser Stephen Ferguson, a real estate agent and an attorney. Ferguson valued the business at $207,000.00.
The plaintiffs hired as an appraiser Don Maloney, an accountant. Maloney testified at trial that he has appraised several businesses over the years including a few that have held liquor licences as assets. He would appraise the value of the liquor licence for the purpose of these business’ tax returns. He never represented clients in any liquor licensing board proceedings, but had performed at least one appraisal of a bar/restaurant. In this present situation, Maloney valued the business by viewing its federal income tax returns for 1990, and applying the methods for valuing businesses under Internal Revenue Ruling 59-60. Maloney considered all of the assets of the business in reaching his evaluation. Maloney’s valuation of the business, based largely on the income method, was $64,000.00.
Neither the plaintiff nor the defendant accepted the other’s appraiser’s valuation, and the appraisers did *185 not select a third-party appraiser. The parties did, however, agree that a third-party appraiser would be selected in the fall of 1992. Donald Dawson made several requests to Shea to select or approve a third-party appraiser. These requests took place during meetings over the next few years and by a letter dated November 11, 1993.[3]
The parties never reached an agreement with respect to an independent appraiser, and the plaintiffs never purchased the business. The plaintiffs filed claims against the defendants alleging breach of contract and violations of G.L.c. 93A.
At trial, the parties offered evidence regarding the tavern’s assets, including its liquor license. Under the terms of its liquor licence, Dinny’s Tavern is exempt from compliance with certain handicap provisions through a “grandfather clause.” This “grandfather clause” ceases to apply if the liquor licence is lost or encumbered.
The defendants argue that Donald Dawson has a prior felony drug conviction, an impediment to obtaining a liquor licence, and that Jane Dawson lives out of state, an absolute bar to obtaining such a licence. The defendants claim that the plaintiffs’ problems in obtaining a liquor licence greatly reduce the value of the tavern, and that such problems were not adequately considered by Maloney, the plaintiffs’ appraiser.
The defendants further argue that Maloney was not qualified to appraise the value of the tavern and its assets, and therefore, a condition of the sale agreements was not satisfied. The defendants claim that they have no obligation to agree to a third-party appraiser or otherwise sell the tavern to the defendants under the terms of the agreements.
Finally, with respect to the plaintiffs’ G.L.c. 93A claims, the defendants argue that they never engaged in any unfair business practices or acted in bad faith. Additionally, the defendants claim that the plaintiffs never sent to them a proper 93A demand letter.
RULINGS OF LAW Breach of Contract
The defendants argue that it had no obligation to appoint, or to agree to the appointment of, a third-party appraiser. The defendants claim that the plaintiffs failed to comply with certain provisions of the sales agreements, or at least a condition precedent required by the agreements, thereby excusing them from satisfying other terms. Specifically, the defendants argue that the plaintiffs did not satisfy their burden of selecting a qualified appraiser. Under Massachusetts law, a party is not required to perform its contractual promises if there is an uncured material failure to perform by the other party. See Davis v. Dawson, Inc., 15 F.Sup.2d 64, 119(D.Mass. 1998); Peabody. N.E., Inc. v. Marshfield, 426 Mass. 436, 441 (1998); Hawthorne’s Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 211 (1993).
Here, this court finds that Maloney was, in fact, qualified to appraise the restaurant and its assets. Maloney had the appropriate academic credentials as well as the necessary and relevant experience. Moreover, in appraising the restaurant, Maloney took into account all of the assets and properly applied a recognized appraisal technique in arriving at his final figure.
The fact that Maloney’s appraisal is substantially less than Ferguson’s does not affect this court’s decision. The contract was designed for this type of situation where the party’s appraisers do not agree. It could be the case that Maloney’s appraisal is incorrect and too low, but it could also be the case that Ferguson’s appraisal is incorrect and too high.[4] This court need not make an ultimate determination as to the value of the restaurant, as the terms of the validly executed contract calls for the parties, through their appraisers, to select a third-party appraiser.
This court finds, in addition to finding that the defendants had a contractual duty to agree, through its appraiser, on a third-party appraiser, that the defendants breached the express terms of the sales agreements, and that such a breach caused injury to the plaintiffs. The defendant failed to agree to a third-party appraiser, direct his appraiser to agree to a third-party appraiser, or even fully participate in discussions regarding this matter. Despite the continuing efforts of the plaintiffs, the parties were never able to come to an agreement regarding a third-party appraiser, the restaurant and its assets were never appraised, and the plaintiffs were not able to repurchase the business under the terms of the sales agreements.[5]
This court is especially concerned with the fact that the plaintiffs, through Maiylin Dawson, bargained for the right to repurchase the business, and that this right was reflected in the price and other terms of the original sale. The plaintiffs have complied with all of the provisions of the repurchase clause, and the defendants should not now be excused from their obligations simply because they disagree with Maloney’s appraisal. Again, the sales agreement provides for just such a situation, and both parties are now bound by its terms.
Because the plaintiffs have met their burden in demonstrating that the defendants have committed a breach of contract, this court must now decide an appropriate remedy. Specific performance is a matter within the sound discretion of the judge. See McCarthy v. Tobin, 429 Mass. 84, 89 (1999) (specific performance is appropriate where the subject of the contract, such as real property, is unique, and money damages will often be inadequate to redress a deprivation of an interest). Specific performance,
ought not to be granted if it will result in imposing an undue hardship upon one party to an agreement or permit the other party to obtain an inequitable advantage. On the other hand, agreements are *186 made to be performed, and relief should be given in the absence of special circumstances showing that it would be inequitable to do so.
Leisure Sports Inv. Corp. v. Riverside Enterprises, Inc., 7 Mass.App.Ct. 489, 492 (1979), citing Freedman v. Walsh, 331 Mass. 401, 406 (1954).
Additionally, this court, as a court with equity jurisdiction, has broad and flexible powers to fashion appropriate remedies. See Matter of McKnight, 406 Mass. 787, 791 (1990).
This court finds that the most appropriate remedy under the circumstances is specific performance. Only by ordering the parties to perform the terms of the sales agreements can this court be assured that the parties receive the intended contractual benefits. This court, therefore, orders that the parties, either individually or through their initial appraisers, within sixty days, agree upon a third-party appraiser that will set the value of the restaurant and its assets.[6] In the event that the parties fail to reach such an agreement, this court orders that each party submit the names and qualifications of two appraisers, and, after the parties have the opportunity to argue the qualifications of the appraisers before this court, this court will select an appraiser to set the value of the restaurant and its assets. After the value of the restaurant is set by the appropriate appraiser, the parties shall satisfy the rest of the terms and requirements of the sales agreements.[7]
Violation of G.L.c. 93A
In order to succeed on a claim for a violation of G.L.c. 93A, the plaintiff must prove that a person who is engaged in trade or business committed unfair or deceptive acts, and that as a result, the plaintiff, who was also engaged in business, suffered a loss of money or property. G.L.c. 93A; Szalla v. Locke, 421 Mass. 448, 450-51 (1995). An unfair or deceptive act is conduct which falls at least within the penumbra of some common law, statutory or other established concept of unfairness, or is immoral, unethical, oppressive, or unscrupulous, and causes injury. PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 595-96 (1975). A party’s breach of their contractual duty of good faith and fair dealing can be the basis for a violation of G.L.c. 93A. See Arthur D. Little Intern, Inc. v. Dooyang Corp., 979 F.Sup. 919, 925 (D.Mass.1997).
Here, while this court finds that the defendants breached their contractual obligations, this court does not find that they engaged in any acts that would arise to violations of G.L.c. 93A. The defendants failed to reach an agreement with the plaintiffs over a third-party appraiser, yet they did engage in initial attempts to satisfy the terms of the contract. They hired their own appraiser, participated, albeit in a limited manner, in discussions regarding a third-party appraiser, and challenged in good faith Maloney’s qualifications. This court finds that the defendants acted fairly in protecting their own interests in the business.[8]

ORDER

For the above reasons, it is hereby ORDERED that judgment enter for the plaintiffs on the breach of contract claims, and that judgment enter for the defendants on the G.L.c. 93A claims.
It is further ORDERED that:
1) the plaintiffs and the defendants, either individually or through their original appraisers, within sixty days from the date of this order, reach an agreement and select a third-party appraiser to set the value of the restaurant, Dinny’s Tavern, and all of its related assets;
2) in the alternative, in the event that the parties cannot reach an agreement as to a third-party appraiser, the parties shall each submit to this court the names and qualifications of two appraisers from which this court, after a hearing as to the qualifications of the appraisers, shall select a third-party appraiser to set the value of the restaurant, Dinny’s Tavern, and all of its related assets;
3) in either event, as discussed in 1) and 2) above, the value set by the third-party appraiser shall be binding, and the parties will be obligated to comply with the rest of the provisions of the sales agreements in accordance with the value set by the third-party appraiser.

 The meetings took place in 1992 and 1994.

 This court notes that there has been some discussion by the parties regarding the liquor license and the possibility that none of the plaintiffs will be able to obtain such a license in their name. This may have a significant impact on the value of the restaurant, and any appraiser should take this issue into consideration. Such a discussion, however, does not excuse the defendants from honoring the terms of the contract.

 This issue of breach of contract is ripe for consideration as the plaintiffs have made continuous efforts to reach an agreement with the defendants.

 While the original sales agreements require the appraisers to select a third-party appraiser, this court finds that such a requirement is now irrelevant. If the parties agree on a third-party appraiser, enforcement of the agreements as written is not necessary. In recognizing that the parties may not reach an agreement, this court has fashioned its own remedy, whereby it orders that the parties compile a list of appraisers from which it can make a selection. Moreover, this court finds that the parties reached an agreement to select a third-party appraiser in the fall of 1992.

 For example, the plaintiffs will have the right to buy back the restaurant and its assets for an amount that is set by the third-party appraiser and that corresponds with the other terms of the sales agreements.

 As this court finds that the defendants did not violate G.L.c. 93A, it need not address the issue of whether the plaintiffs’ presentment letter was timely or insufficient.